**Lauretta S. DURKEE, formerly Lauretta S. Busk, Appellant,**

**v.**

**S. A. BUSK, as Administrator of the Estate of A. J. Stockman; and S. A. Busk, individually; and as partners and owners of the A. J. Stockman Store, Appellees.**

**No. 18.**

Supremé Court of Alaska.

Sept. 12, 1960.

Charles E. Cole, Fairbanks, for appellant.

Maurice T. Johnson, Fairbanks, for appellees.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Associate Justice.

The question presented is whether the trial court was justified in reforming a written agreement for the sale of an interest in a partnership.

In May 1947, A. J. Stockman, S. A. Busk, and Lauretta Busk [now Lauretta Durkee] executed certain "Articles of Co-Partnership" for the purpose of operating a general mercantile business and trading post at Ruby, Alaska, known as the A. J. Stockman Store. At this time Stockman was purchasing this business from Carl Bohn under a sales contract upon which there was remaining unpaid in excess of $32,000.

The partnership agreement recited that Stockman was assigning and transferring to the Busks a one-half undivided interest "in said indebtedness"; that the debt to Bohn would be paid from profits from the business; that each partner (Stockman as one partner and S. A. Busk and his wife Lauretta Busk as the other partner) would be given credit for one-half of each payment; and that these amounts would be added to the "capital investment" or "proprietorship" of each partner. The three parties to the partnership agreement were to devote all of their time and energy to the conduct of the business. Stockman was allowed a monthly drawing account of $300,

S. A. Busk, $300, and Lauretta Busk, $200 —such amounts to be available from the cash receipts of the business and not the profits. Busk and his wife were permitted to advance into their capital investment or proprietorship all possible amounts of their drawing account, together with the proportion of earned profits due them, and the one-half sum of payments made on the indebtedness.

In December 1948 the parties executed an instrument entitled "Sale Agreement With Mortgage Security." This instrument recited that Lauretta Busk, in consideration of the sum of $9,000, sold and conveyed to Stockman and S. A. Busk "her investment and proprietorship in the said A. J. Stockman Store." Of the sale price of $9,000, the sum of $1,000 was paid on the execution of the agreement, and the balance of $8,000 was payable in equal semi-annual installments of $2,000 each, commencing June 30, 1949. This indebtedness was represented by four promissory notes, of $2,000 each, signed by Stockman and Busk, which were delivered to the appellant, Lauretta Busk Durkee. The agreement stated that it would be considered as a mortgage on the property, buildings, and merchandise stock of the store to secure payment of the notes.

Appellant's interest (referred to by the parties as an "investment" or "proprietorship") in the partnership was fixed at $9,000 or 40% of the joint investment made by her and S. A. Busk. This amount was arrived at by the following computation as set forth in the sale agreement:

"Items of Investment:

| | | |
|---|---|---|
| Treasury Checks | | $ 1196.15 |
| Owing by A. J. Stockman | | 2416.05 |
| Half of Store Funds Used paying bank loan | | 853.81 |
| Half of payment on Store purchase Cont. | | 585.50 |
| Salaries, 1946, combined | $6000.00 | |
| Less mdse withdrawn | 1044.00 | 4956.00 |
| Half payment Store contract, 1947 | | 8146.27 |
| Salaries 1947, combined | $6000.00 | |
| Less mdse withdrawn | 1651.76 | 4348.24 |
| | Total | 22,502.02 |
| 60% owned by S. A. Busk | 13,501.21 | |
| 40% owned by Lauretta S. Busk | 9,000.81 | $22,502.02" |

In September 1949 appellant commenced an action upon the promissory notes. Stockman and Busk admitted execution and delivery of the notes and the non-payment thereof. However, they pleaded in defense that appellant had induced them to sign the notes and mortgage upon fraudulent misrepresentations set forth in the accounting of partnership affairs which the appellant had prepared. They also alleged that after they had examined the accounting and had audited the partnership books, it was found no money was owing to appellant and there was no valuable consideration for the notes and mortgage.

The case was tried by the court (without a jury) on February 27, 1959. Since it had been admitted that the notes being sued upon were executed by Stockman and Busk and delivered to appellant, and they had not been paid, appellant rested her case without presenting evidence. The evidence for the defense consisted solely of the testimony of S. A. Busk, together with the sales

agreement and articles of co-partnership introduced as exhibits. There was no rebuttal.

In its written opinion the district court found that although no actual fraud had been proved, the accounting set forth in the sale agreement was in error since two salary items had been listed as assets instead of liabilities. Accordingly, the court recomputed the value of appellant's interest in the partnership and came up with the figure of $1,074.20, of which $1,000 had been paid. This left owing to appellant the sum of $74.20. Judgment was entered for appellant in that amount on April 16, 1959, and this appeal followed.

### 1. Failure of Consideration.

The district court, relying upon Section 28 of the Uniform Negotiable Instruments Act,[1] held that there was a partial failure of consideration, pro tanto, as to all of the notes except for the sum of $74.20, by reason of errors in the instrument (sales agreement) upon which the notes were based. The court concluded that because of this, Stockman and Busk did not get what they bargained for, that is, the true legal value of appellant's interest in the partnership.

The word "consideration", as used in the term "failure of consideration", means the promised performance of one party agreed to be exchanged for that of the other.[2] There is a failure of consideration where one who has given or promised to give some performance fails without his fault to receive in some material respect the agreed exchange for that performance.[3]

In this case Stockman and Busk had promised to pay $9,000 in exchange for a transfer to them of appellant's interest in the partnership. It was this "interest", therefore, that was to be exchanged, and not as the court below held, the "true legal value" of such interest. Stockman and Busk did receive what they bargained for; the sale agreement recites that appellant had sold and conveyed to them "her investment and proprietorship in the said A. J. Stockman Store * * *." There was, then, no failure of consideration, because the performance by appellant was neither absent, incomplete, nor defective.

### 2. Mistake—Reformation of Contract.

The court below determined that there was a mistake in computing appellant's investment and proprietorship in the partnership business, and that this justified reforming the written agreement so that appellant's interest would amount to $1,074.20, rather than $9,000.

The province of reformation is to make a writing express the bargain which the parties desired to put in writing.[4] Reformation of a writing is justified when the parties have come to a complete mutual understanding of all the essential terms of their bargain,[5] but by reason of mutual mistake, or its equivalent,[6] the written agreement is not in conformity with such understanding in a material matter.[7] However, proof of these facts is essential, and the burden of proof is upon the one seeking such equitable relief.[8] The question, then,

---

1. Section 27–1–35, A.C.L.A.1949, which provides that: "Absence or failure of consideration is matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense pro tanto, whether the failure is an ascertained and liquidated amount or otherwise."

2. Restatement, Contracts § 274, comment b (1932); 3 Williston, Contracts § 814, p. 2292 (rev. ed. 1936).

3. 3 Williston, supra, note 2, p. 2293.

4. 5 Williston, Contracts Sec. 1549, p. 4343 (rev. ed. 1936).

5. Id. § 1548, p. 4339.

6. "Knowledge by one party of the other's mistake regarding the expression of the contract is equivalent to mutual mistake." 5 Williston, supra, note 4, § 1548, p. 4340; Restatement, Contracts § 505 (1932).

7. 5 Williston, supra, note 4, § 1547, p. 4336; Restatement, Contracts § 504 (1932).

8. Restatement, Contracts, § 511 (1932); 5 Williston, supra, note 4, § 1597, p. 4450; Maryland Casualty Co. v. United

is whether appellees established a case for reformation of the sale agreement.

The accounting upon which appellant's interest was computed is set forth in the agreement.[9] It specifically includes items denominated as "salaries"[10] for 1946 and 1947. It was the inclusion of those items that the district court held was erroneous and based on a mistake as to what should constitute appellant's "investment" in the partnership business.

The only evidence offered to show mistake was the testimony of Busk. Under cross-examination by appellant's counsel, Busk testified as follows:

"Q. I might ask one further question. Mr. Busk, what is inaccurate about this sales agreement? A. It was not a salary. That is the basis the sales agreement was evidently drawn up on.

"Q. Is everything in here accurate except the salaries? A. There shouldn't have been any.

"Q. If the salaries were omitted, then you admit everything else is accurate? A. Yes."

This is inconsistent with prior testimony given by Busk while under direct examination by his own counsel. At one point he testified that—

"The item shown as '60% owned by S. A. Busk' was the total of *assets that had been built up through salaries or drawing accounts that we just accumulated.* That's the way it was accumulated." [Emphasis added.]

Rather than indicating a mistake, this testimony tends to prove that the items for "salaries" were considered as "assets", and thus legitimately could form the basis upon which appellant's interest in the partnership was to be computed.

States ex rel. Green, 8 Cir., 1948, 169 F.2d 102, 112.

9. See opinion, 355 P.2d 590.

10. Since the partnership agreement makes no mention of salaries as such, mention

At another point after Busk had stated that appellant's interest was 40%, he was asked what was the correct value of such interest. His answer was—

"It was computed in the amount of $4,392.70."

Then when asked to explain how he had arrived at this figure, Busk testified as follows:

"A. Your Honor, the amount of $4,392.70 which was included in the investment was arrived at in this way: Credit taken on store contract—$3,-942.70.

"The Court: Could you say that slowly please. A. Paid advance to her proprietorship investment, two and one-half months absence from the store—

"The Court: I beg your pardon—$3,942.70 · was the credit taken on the Store contract? A. $3,492.70. [sic]

\* \* \* \* \* \*

"A. The balance of this figure, two and a half months absence from the store in 1956, the sum of $500.00.

"The Court: You mean you deducted that—less two and a half months absence from the store? A. That's at the rate of $200.00 per month.

"The Court: Now that is added to what? A. Yes, to the $400.00.

"The Court: How much is that again? A. Then two months absence from the store in 1948, the sum of $400.00.

"The Court: Which is a total of $4,392.70? A. Yes, your Honor. On the sales agreement the indebtedness that Lauretta Durkee owed at that time was the sum of $6,502.05."

This testimony is significant. Busk stated that from the correct value of appel-

of this term in the sale agreement must have been with reference to the drawing accounts to which each partner was en- · titled.

lant's interest, which was $4,392.70, there should be deducted the sum of $500, representing a two and one-half months' absence from the store in 1956 [11], and an additional $400, representing two months' absence in 1948. This creates the inference, logically, that the remainder of accrued but unpaid salary, or drawing account, for the appellant when she was not absent from the store was properly included in the accounting as a part of what the parties termed her "investment" or "proprietorship." As previously pointed out, this testimony is inconsistent with Busk's subsequent statement to the effect that the *only* thing inaccurate about the sale agreement was the inclusion of items for salaries.

In support of its conclusion that salaries were mistakenly included in the accounting, the district court stated in its opinion that the original articles of co-partnership provided for no wages or salaries to the partners, but did provide for drawing accounts, and that Busk had testified that such drawing accounts were only to be paid when the business warranted it. However, the partnership agreement recites that a statement and account of the partnership affairs should be made each year and that—

"* * * the sums drawn by each party of the preceding year shall be charged; remainder of his drawing account and proportion of profits due him shall be ascertained *and written in the statement, for each partner.*" [Emphasis added.]

The fact that unpaid drawing accounts were to accrue points to the reasonableness of counting such accumulated amounts as part of the investment of each partner. Thus, there is no support here for the finding made by the court below.

The court then went on to say that the agreement on which the notes were based makes no mention of such wages owing to appellant as included in the settlement; but on the contrary specifically recites· that the instrument was in settlement of the "investment and proprietorship" of appellant in the partnership.

But this is not so. The sale agreement specifically includes items of "salary" in the computation of appellant's interest. Furthermore, the partnership contract permitted Busk and appellant to—

"* * * each year advance into his (or their) *capital investment or proprietorship, all possible amount of their drawing account,* together with proportion of earned profits due them, and the one-half sum of payments made on indebtedness * * *." [Emphasis added.]

This language clearly refutes the claim that a mistake was made in counting unpaid salaries, or drawing accounts, as a portion of appellant's investment in the partnership.

The evidence in this case does not prove that the agreement fails to express the understanding and intent of the parties. Only clear and convincing· evidence that a mistake has been made will justify a decree of reformation [12], and that is absent here. The findings of the district court, therefore, are not supported by the evidence and, in fact, are "clearly erroneous." [13]

The judgment of the district court, entered April 16, 1959, is reversed, and the case is remanded to the Superior Court, Fourth District, with directions that judgment be entered for appellant.

11. The witness must have meant "1946" instead of "1956", since the appellant had disposed of her interest in the partnership in 1948.

12. Restatement, Contracts § 511 (1932); 5 Williston, Contracts, supra, note 4, § 1597, pp. 4450 et seq.; Maryland Cas-

ualty Co. v. United States ex rel. Green, 8 Cir., 1948, 169 F.2d 102, 112; Elysian Homes, Inc. v. Davis, 1956, 231 La. 95, 90 So.2d 791, 792; Demetriades v. Kledaras, Del.Ch.1956, 121 A.2d 293, 295.

13. Rule 52(a), Rules of Civil Procedure.