CAMPBELL v GAWART

Cᴏɴᴛʀᴀᴄᴛs—Lᴀɴᴅ Cᴏɴᴛʀᴀᴄᴛ—Usᴜʀʏ—Lᴇɢɪsʟᴀᴛɪᴠᴇ Iɴᴛᴇɴᴛ.

A land contract which provided for the maximum interest rate statutorily allowable at the time of its execution but also contained a provision for an increase in the interest rate in the event the maximum legal rate was changed by statute is not per se invalid, but the effect to be given to such a contractual provision is controlled by the manner in which the Legislature changes the law authorizing a higher rate of interest; the intent of the Legislature in enacting a statute allowing a higher rate in certain cases was that the increase in the maximum interest rate be wholly prospective and applicable to contracts executed after the effective date of the new legislation only (MCLA 438.31, 438.31c).

Appeal from Calhoun, Creighton R. Coleman, J. Submitted Division 3 November 8, 1972, at Grand Rapids. (Docket No. 13692.) Decided April 25, 1973.

Complaint by Larry O. Campbell and Martha L. Campbell against Carl C. Gawart and Rose M. Gawart for declaratory judgment that the interest rate on a land contract is 7%. Summary judgment for plaintiffs. Defendants appeal. Affirmed.

*Vandervoort, McFee, Christ & Carpenter,* for plaintiffs.

*Sullivan, Hamilton, Ryan & Schulz,* for defendants.

Before: R. B. Bᴜʀɴs, P. J., and Hᴏʟʙʀᴏᴏᴋ and Dᴀɴʜᴏғ, JJ.

Rᴇғᴇʀᴇɴᴄᴇ ғᴏʀ Pᴏɪɴᴛs ɪɴ Hᴇᴀᴅɴᴏᴛᴇ
17 Am Jur 2d, Contracts §§ 166, 168–170.

Danhof, J. The parties to this action are the parties to a land contract executed July 28, 1969. The defendants were the vendors and the plaintiffs were the vendees. The plaintiffs brought this action seeking a judgment that interest on the unpaid balance of the contract should accrue at the rate of 7%. The trial court granted plaintiffs' motion for summary judgment and we affirm.

The land contract provided that the rate of interest was to be 7%, the maximum legal rate at that time, but it also contained the following clause:

"The interest rate on this contract shall increase in accordance with the maximum legal rate in the State of Michigan in the event the usury laws are changed from time to time with a top limit, however, of 8 1/2%."

On August 12, 1969, 1969 PA 305 took effect. That act provided:

"For the period ending on December 31, 1970 it shall be lawful for the parties to a conventional home loan mortgage or land contract to agree in writing for the payment of any rate of interest. This exception and limitation shall be self-executing and shall require further action by the legislature to perpetuate the provision after December 31, 1970. On any loan, other than a loan insured or guaranteed by the federal government or an agency thereof, when the primary security is residential real estate (i) the lender, directly or indirectly, shall not require, as a condition of the making of the loan, any deposit, other than escrow accounts, to be maintained by the borrower; (ii) the lender, directly or indirectly, shall not impose or collect, as a condition of the making of the loan, any payment from any seller or borrower pursuant to a discount, point or similar system. If the loan is paid within 3 years of execution a prepayment fee of not more than 1% may be charged on the balance due on the loan. *A provision in any note, mortgage, contract or other evidence of indebted-*

*ness, heretofore or hereafter made, that the rate of interest initially effective may be increased for any reason is unenforceable in any court in this state."* (Emphasis added.)

At the present time the act,[1] MCLA 438.31c; MSA 19.15(1c) contains the following provisions:

"(2) For the period ending on December 31, 1973, it is lawful for the parties to any note, bond or other evidence of indebtedness, executed after August 11, 1969, the bona fide primary security for which is a first lien against real property, or the parties to any land contract, to agree in writing for the payment of any rate of interest, but no such note, mortgage, contract or other evidence of indebtedness shall provide that the rate of interest initially effective may be increased for any reason whatsoever.

\* \* \*

"(5) The provisions of subsection (2) shall apply only to loans made by lenders approved as a mortgagee under the national housing act or regulated by the state, or by a federal agency, who are authorized by state or federal law to make such loans.

"(6) Notwithstanding the provisions of subsection (5), lenders or vendors not qualified to make loans under subsection (5) may make, or may have made mortgage loans and land contracts specified in subsection (2) on or after August 16, 1971, which mortgage loans and land contracts provide for a rate of interest not to exceed 11% per annum, which interest shall be inclusive of all the amounts defined as the 'finance charge' in the federal truth in lending act (Public Act 90-321), and the regulations promulgated thereunder."

Contractual provisions such as the one in the case at bar are not per se invalid, but the effect to be given to them is controlled by the way in which

---

[1] The act was amended by 1970 PA 75. As applied to this case the language of the 1970 amendment is not materially different from the present act.

the Legislature changes the law. If the Legislature clearly manifests an intent that only contracts executed after a certain date may bear a higher interest rate, a contractual provision to the contrary is of no force or effect. A contract that provides for a rate of interest, that would have been usurious at the date of its execution, to be paid upon the contingency of the Legislature raising the maximum interest rate is a contract with reference to future law. What that future law will be is the prerogative of the Legislature. If the Legislature changes the law in a way that is wholly prospective the old maximum rate applies and this is not an impairment of contract. The parties contracted for a higher rate of interest if the Legislature saw fit to allow it. Therefore, the question is, whether or not the Legislature saw fit to do so.

We believe that the Legislature intended that the increase in the maximum rate be wholly prospective. With only minor changes in wording MCLA 438.31; MSA 19.15(1) has been in effect at all times relevant to this action. That statute provides in part:

"The interest of money shall be at the rate of $5.00 upon $100.00 for a year, and at the same rate for a greater or less sum, and for a longer or shorter time, except that in all cases *it shall be lawful for the parties to stipulate in writing for the payment of any rate of interest, not exceeding 7% per annum.*" (Emphasis added.)

We must start from the proposition that the Legislature has decreed that the maximum legal rate shall be 7% subject to several exceptions. In 1969 PA 305 the Legislature allowed a higher rate for some mortgages and land contracts, but at the

same time invalidated agreements to raise the interest rate on the happening of a contingency. There is, to say the least, some doubt as to the constitutionality of this provision as applied to contracts that provided for an increase from a lower figure to a maximum of 7%, but such a contract is not before us. The contract in this case was for an increase from 7% to a higher figure.

The Legislature has frequently amended the statute, but the intent that the change be wholly prospective has remained. The comparable provision of MCLA 438.31c; MSA 19.15(1c) now in force still contains language limiting its effect to contracts executed after August 11, 1969 or in some cases after August 16, 1971.

The contract in this case does not fall within the statutory provisions authorizing an interest rate greater than 7%, and the general prohibition of interest in excess of 7% applies.

Affirmed, costs to the plaintiffs.

All concurred.