J. R. LEWIS, d/b/a Four Seasons
Mobiland, Appellant,

v.

ANCHORAGE ASPHALT PAVING CO.,
an Alaska Corporation, Appellee.

No. 3221.

Supreme Court of Alaska.

June 2, 1978.

Raymond A. Nesbett, Anchorage, for appellant.

Karl L. Walter, Jr., Groh, Benkert &
Walter, Anchorage, for appellee.

OPINION

Before BOOCHEVER, C. J., and RABIN-OWITZ, CONNOR, BURKE and MAT-THEWS, JJ.

BURKE, Justice.

Following our decision in *Lewis v. Anchorage Asphalt Paving Co.*, 535 P.2d 1188 (Alaska 1975), this case was remanded for further findings of fact. Those findings are now the subject of another appeal.

The pertinent facts can be summarized as follows: In July of 1969 J. R. Lewis contracted with Anchorage Asphalt Paving Co. to shape, compact, and pave seven roads for a price of $57,000, in a trailer court owned and designed by Lewis. Prior to bidding on the job Julian Longoria of Anchorage Asphalt inspected the premises. Joe Longoria, Vice-President of Anchorage Asphalt, toured the area but did not leave his automobile to inspect the soil. He observed what he thought "looked like gravel on the road." According to Lewis' undisputed testimony at the remand hearing, peat and other subsurface materials were clearly visible during the inspection because water and sewer line installations were underway.

Three of the seven roads had been surfaced with "cold mix" approximately one year before the contract was made between Lewis and Anchorage Asphalt. This surface proved to be inadequate and Lewis informed Anchorage Asphalt that he was relying on their expertise to do a complete job which would last the normal, useful life (ten to fifteen years). The other four roads consisted mostly of a peat base covered with glacial till. Glacial till, which is the residue deposited by a retreating glacier, resembles gravel and in its natural state is a stable material. However, when it is removed and distributed, as was the glacial till in the instant case, it must be compacted to a high degree to make it sufficiently stable to maintain weight bearing loads.

When placed over a peat base, glacial till becomes even less stable because of the moisture in the peat. Lewis had surfaced the four newer roads with glacial till from a hill on his property and he advised Anchorage Asphalt that if extra material was needed for grading the roads the same glacial till material could be used.

In July and August of 1969, without investigating the nature of the soils in the roadways, Anchorage Asphalt scraped, graded, compacted, and paved the roads. With the onset of cold weather the pavement began to deteriorate. Portions of the roads displayed "alligatoring"[1] and an uneven settling or roller-coaster effect. Other portions of the street exhibit pot holes and portions of the surface broke up. The deterioration was caused by the uneven settling and heaving of the subsurface glacial till as it froze and thawed in concert with the moisture seepage from the peat upon which it had been placed. This sort of deterioration can be avoided if appropriate steps are taken to compact the subsurface prior to paving.

In the previous appeal we held that "an essential element of performing any contract in a workmanlike manner according to acceptable standards"[2] was the duty to warn the owner of defects in the project which would be likely to cause the work to fail if the contractor knew or reasonably should have known of those defects. We remanded the case to the superior court to determine whether Anchorage Asphalt was chargeable with such knowledge.[3] On remand additional testimony was taken on that issue. After reviewing the evidence from the trial and the remand hearing, and taking judicial notice of the presence of large areas of peat, gravel, mud, clay and glacial till in the vicinity in question, the trial judge found that Anchorage Asphalt could not be charged with "knowledge of the condition of the subsurface soil, and further knowledge that paving placed on

1. This phenomenon is described in n.3 of our first opinion. 535 P.2d at 1192.

2. 535 P.2d at 1199. The contract executed by Lewis and Anchorage Asphalt guaranteed that

the work would be "completed in a workmanlike manner according to standard practices."

3. 535 P.2d at 1200.

such surface would fail." Judgment was entered for Anchorage Asphalt and Lewis has appealed from that judgment contending that the finding is in error.

■ The standard of review for a challenge to the trial court's findings of fact is set forth in Rule 52(a), Alaska R.Civ.P., which provides in relevant part:

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

A finding is clearly erroneous when it leaves the court with the "definite and firm conviction on the entire record that a mistake has been made, although there may be evidence to support the finding." *Frontier Saloon, Inc. v. Short*, 557 P.2d 779, 781 (Alaska 1976). *Accord, Chugach Electric Ass'n v. Northern Corp.*, 562 P.2d 1053, 1060 n.22 (Alaska 1977). We conclude that the trial judge's decision that he could not find as a matter of law or fact, that Anchorage Asphalt "can be charged, by a preponderance of the evidence or evidence as a result of reasonable inference, with knowledge of the condition of the subsurface soil, and further knowledge that paving placed on such surface would fail," was clearly erroneous.

The primary reason for our decision can be found in the trial judge's decision itself. In the paragraph immediately preceding the conclusion quoted above, the trial judge stated that judicial knowledge and notice of the "large peat areas was taken as was judicial knowledge and notice of large areas of gravel, mud, clay and glacial till in the same area." Thus, pursuant to Rule 43(a)(2)[c], Alaska R.Civ.P.,[4] the trial judge took judicial notice of the soil conditions in the area. Anchorage Asphalt has raised no objection to the trial court taking judicial notice that those conditions existed.

■ We find it entirely incon⸱ ⸱ to conclude that certain facts are so ⸱⸱⸱rally known that judicial notice may be taken of them while at the same time deciding that a company such as Anchorage Asphalt, whose work routinely involves those very facts, is not chargeable with at least the same degree of knowledge. Such being the case, we believe Anchorage Asphalt was required to inquire about, if not test, the soil conditions. As noted in our earlier decision, it is undisputed that placing paving directly on frost-susceptible material was not in accordance with workmanlike standards since the result would be the precise type of failure of the paved surface which occurred here.[5]

In addition we are persuaded that when Julian Longoria visited the site while the water and sewer lines were being installed he must have viewed the exposed peat. Lewis' testimony at the hearing on remand that peat was exposed was not controverted. The sole reason for the remand of this case was for a determination of what Anchorage Asphalt knew or reasonably should have known about the subsurface conditions because the testimony of Julian and Joe Longoria had been ambiguous on that point. However, neither of the two testified at the hearing on remand. Thus, Lewis' testimony as to the visibility of the peat was left undisputed.

■ Anchorage Asphalt seems to contend that because neither Joe nor Julian Longoria were soils experts, they should not be expected to note soil conditions, even those which are conspicuous. Anchorage Asphalt's expertise as a paving company[6] must include expertise in soils to the extent that soil conditions affect the company's end product, the paved road. Accordingly

---

4. Rule 43(a)(2)[c] provides:

    (2) . . . Without request by a party, the court may take judicial notice of:

  .    .    .    .    .

    [c] Such facts as are so generally known or of such common notoriety within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute.

5. 535 P.2d at 1200.

6. The expertise of Anchorage Asphalt was accepted in our earlier opinion in this case. 535 P.2d at 1197.

we are unpersuaded by Anchorage Asphalt's assertion of innocence through ignorance. If Anchorage Asphalt is to hold itself out as a competent paving company, it must assume that its representatives will be chargeable with expertise in the paving business.

We conclude that Anchorage Asphalt knew or reasonably should have known of the subsurface conditions and consequently had a duty to warn Lewis of the possibility of the sort of failure which occurred in this case. Having failed to warn Lewis of this possibility, Anchorage Asphalt is liable to Lewis for those damages necessary to put Lewis in as good a position as that in which he would have been had such a warning been given.

This case is REVERSED and REMANDED for a determination of damages in accordance with our instructions in the earlier decision in this case.[7]

---

**7.** Note 31 from our previous decision provided the following direction as to damages:

Since we have affirmed the trial court's finding that 'preparation of the subgrade' involved only its 'grading, shaping and compacting', damages should not include the costs of excavation and filling, but only the costs of removing the portions of paving that have failed, shaping and compacting the subgrade and replacing that pavement. The amount due and unpaid on the contract will be an offset against those damages, and if the amount due and unpaid exceeds the amount of the damages, Anchorage Asphalt will be entitled to an award for the difference. 535 P.2d at 1200.