John T. RILEY, d/b/a Shamrock
Excavating, Appellant,

v.

NORTHERN COMMERCIAL COMPANY,
MACHINERY DIVISION, Appellee.

No. 5754.

Supreme Court of Alaska.

July 30, 1982.

James H. McCollum and W. Richard Fossey, Bankston & McCollum, Anchorage, for appellant.

Phillip Eide, Ely, Guess & Rudd, Anchorage, for appellee.

Before BURKE, C. J., RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

Northern Commercial Company (NC) filed suit on November 3, 1978 against John T. Riley d/b/a Shamrock Excavating (Riley) to collect amounts due on a promissory note. Riley denied owing the full indebtedness, and in addition, filed a counterclaim to recover amounts owed on an unrelated transaction. Following Riley's failure to file a timely response to certain requests for admissions, the superior court granted NC's motion for summary judgment on the promissory note claim. Subsequently, the superior court also granted NC's motion for summary judgment on the contractual counterclaim. On appeal, Riley's principal argument is that each claim presents triable issues of fact. We also address application of Civil Rule 36 and the award of prejudgment interest.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Promissory Note Claim*

On December 12, 1975, Riley executed a promissory note for $51,209.20 in favor of NC. The note liquidated Riley's existing account with NC for services and supplies previously rendered. Ninety-five invoices, none of which are signed by Riley, provided full consideration for the note.

Riley defaulted after making one payment on the note. This litigation ensued. Riley submits that in executing the note he did not intend to acknowledge all amounts claimed owed by NC.

When deposed by NC, Riley was unable to specify which of the ninety-five invoices were, in his view, invalid. Pursuant to Civil Rule 36, NC then propounded certain requests for admissions regarding the ninety-five invoices. In substance, NC sought to identify which of the invoices were not disputed.

Riley's responses to the requests were due near the end of August. In a letter to NC's counsel, Riley's counsel stated that the responses would be furnished during the Labor Day week. The parties agreed to extend this deadline, first to September 21, and then to September 28. Riley, however, did not respond.

NC filed a motion for partial summary judgment on October 30, 1979, asserting that upon Riley's failure to respond to the requests, such requests were deemed admitted.

Riley served his responses on November 19, 1979, almost two months after a deadline already extended by the parties. In his response, Riley stated that he was without sufficient information to verify any of the ninety-five invoices.[1]

---

1. Riley's response provided in pertinent part:
    (a) Defendant is without sufficient information or belief as to whether the listed invoices are true and correct copies of the originals. The only person who would know that is the plaintiff.
    (b) Defendant is without sufficient information or belief as to whether the listed invoices are kept in the ordinary course of business. Once again, the only person who would know that is the plaintiff.
    (c) Defendant is without sufficient information and belief as to whether he received the parts or services referred to in the invoices. Defendant does not remember any of these invoices and since he has not signed

## B. *Riley's Counterclaim*

Riley initially performed excavation and backfilling services for NC pursuant to an oral agreement. That contract provided for a lump sum payment. Riley performed additional work not contemplated by the oral agreement. For part of this work, Riley obtained extra payment at the rate of $2.40 per ton of gravel fill supplied.

The parties subsequently negotiated a contract for Riley to perform more extensive excavation and backfilling work. Riley submits that the written contract followed an understanding to "work it on the same principles." The contract, prepared by NC's agent who served as consulting engineers on the project, the consulting firm of Mark G. Reese, stated that payment would be at a rate of $3.33 per cubic yard of filled gravel. Riley signed the contract on April 17, 1975, purportedly under the mistaken impression that Reese had calculated the rate of payment in the second contract (in terms of filled yardage) to be the equivalent of the payment employed in the first contract (in terms of tons). Riley cites in this regard a letter from Reese which states that "we herewith authorize an extension of previous contract for you to proceed with subject excavation and backfill." Riley asserts that NC was aware of his misunderstanding at the time the contract was formed.

After obtaining his first progress payment, Riley realized that the rates of payment were in fact not equivalent. Riley then notified NC's store manager, Gary Ratzlaff, of the mistake. There is some ambiguity whether Ratzlaff referred Riley to Mark Reese, or whether Ratzlaff himself pursued the matter with Reese.[2] Under either version, Riley claims that Reese ultimately agreed to correct the matter. Reese is now deceased. Riley completed performance of the contract in July 1975, and accepted final payment for the excavation work at the rate specified in the contract. His failure to pursue this claim immediately, he asserts, is attributable to the parties' long business relationship.

## II. PROMISSORY NOTE CLAIM

### A. *Deemed Admissions*

Riley argues that the superior court erred in deeming NC's requests for admissions admitted.[3] We thus address whether it was an abuse of discretion for the superior court to fail to allow Riley to submit late responses to NC's requests for admissions. *See Palzer v. Serv-U-Meat Co.*, 419 P.2d 201, 204 n.13 (Alaska 1966); *cf. Miracle v. Thompson*, 581 P.2d 666, 669 (Alaska 1978) (abuse of discretion standard in review of Rule 60(b) motion).

■ At issue is the vexatious problem of how to treat untimely answers to requests for admissions. NC submits that it properly utilized the appropriate procedure to streamline the pending litigation, and that if Civil Rule 36 is to serve any value in expediting litigation, Riley should not be allowed to submit cursory responses almost

---

any of them, he reasonably believes he did not receive any of them. Defendant has made reasonable inquiry into his records and these records do not reflect that defendant ever received any of these parts and/or services.

    (d) Defendant denies owing the sums claimed by plaintiff.

A number of the requests for admissions contained subpart (e). Riley submits that he did not realize that some of the 95 requests contained an additional request, and as a result, Riley failed to provide any answer to subpart (e).

2. It is unclear whether Riley's sole contact was with Ratzlaff. Riley's deposition, though somewhat unclear, suggests that Riley dealt only with Ratzlaff. In contrast, Riley's affidavit suggests that Ratzlaff merely referred Riley to Reese, and that Riley subsequently met with Reese himself. The affidavit of Dale Fomby, Riley's employee, supports this version.

3. Riley did not file a motion to withdraw a deemed admission, the method prescribed by Rule 36. *See Equal Employment Opportunity Comm'n v. Baby Prods. Co.*, 89 F.R.D. 129 (E.D.Mich.1981). Riley instead filed a motion for reconsideration after the trial court granted NC's motion for partial summary judgment. A similar procedure was pursued in *Palzer v. Serv-U-Meat Co.*, 419 P.2d 201, 204 (Alaska 1966). *See also Bittner v. State*, 627 P.2d 648 (Alaska 1981).

two months after an already extended due date. Riley, on the other hand, argues that it is inequitable to deny him an adjudication on the merits where the delay in responding is attributable to counsel's negligence.[4]

■ Civil Rule 36 provides that a party may serve any other party with written requests "for the admission . . . of the truth of any matters. . . ." The rule further provides that where the responding party does not submit a response within the time constraints of the Rule, the matter is deemed admitted. The submission of an untimely response is thus the equivalent of an attempt to withdraw an express admission. Rule 36 provides that in its discretion a court may allow the respondent to withdraw an admission "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." [5]

In *Palzer v. Serv-U-Meat Co.*, 419 P.2d 201 (Alaska 1966), we addressed a similar claim for relief from the effect of a deemed admission.[6] That case involved a suit against sureties for the payment of goods received by a third party. Palzer failed to respond to requests for admissions within

the ten day time period prescribed by Rule 36. The trial court, concluding that the requests for admissions were deemed admitted pursuant to the terms of Rule 36, granted summary judgment. Palzer sought relief from judgment. We stated that "circumstances may exist where strict adherence to the requirements of the rules will not advance the rules' objectives." 419 P.2d at 206, *quoting Sanuita v. Hedberg*, 404 P.2d 647, 651 (Alaska 1965); *see also* Alaska R.Civ.P. 94. We concluded that on the particular facts presented, "the trial court's adherence to the technical aspects of Civ.R. 36 has resulted in the denial of substantial justice to appellants." 419 P.2d at 206. Accordingly, we held that the failure of the trial court to grant relief from judgment was an abuse of discretion.

*Palzer* is quite readily distinguishable from the present controversy. A prime consideration in *Palzer* was that the requesting party apparently extended the time period, so that the proffered responses were at most several days late.[7] In contrast, Riley's response was almost two months late, despite the fact that the deadline had previously been extended for one month by the parties. Another consideration important to the *Palzer* court was that the trial court and the requesting party had

4. Riley notes that were he allowed to withdraw the deemed admissions, NC could file a motion pursuant to Civil Rule 37(c) to recover all reasonable expenses incurred in establishing the validity of the invoices. We note, though, that sanctions imposed pursuant to Rule 37(c) are appropriate only where a party willfully intends to impede the discovery process. *See Hawes Firearms Co. v. Edwards*, 634 P.2d 377 (Alaska 1981).

5. Civil Rule 36 parallels Federal Rule of Civil Procedure 36. Federal courts employ a two-prong test to determine whether a party should be afforded an opportunity to submit an untimely response. *Pleasant Hill Bank v. United States*, 60 F.R.D. 1 (W.D.Mo.1973). *See generally* C. Wright & A. Miller, Federal Practice and Procedure § 2257, at 719–20 (1970); Finman, *The Request For Admissions in Federal Civil Procedure*, 71 Yale L.J. 371, 432–33 (1962).

The first prong of the test is whether the late response will subserve the presentation of the case on the merits. The second prong of the test, more typically at issue, addresses whether

allowing the late filing will prejudice the party who propounded the requests. *E.g., Warren v. International Bhd. of Teamsters*, 544 F.2d 334 (8th Cir. 1976); *French v. United States*, 416 F.2d 1149 (9th Cir. 1969); *Moosman v. Joseph P. Blitz, Inc.*, 358 F.2d 686 (2d Cir. 1966); *Weva Oil Corp. v. Belco Petroleum Corp.*, 68 F.R.D. 663 (N.D.W.Va.1975).

6. *See also Jackson v. Kotzebue Oil Sales*, 15 Alaska 494, 17 F.R.D. 204, 206 (1955) (responding party granted additional time to respond since counsel served in the Territorial Legislature).

7. In the recent case of *Bittner v. State*, 627 P.2d 648 (Alaska 1981), responses to requests for admissions were submitted four days late. The superior court granted summary judgment. On appeal, the requesting party conceded that it would be inequitable to hold that the requests for admissions were deemed admitted. We agreed, and thus reversed the order of summary judgment.

other available sources of information, such as the principal's affidavit, which in substance constituted denials to the request. 419 P.2d at 207.[8] NC has not had the benefit of any comparable information. Indeed, it is noteworthy that when Riley did respond, his responses were quite perfunctory.[9] Riley responded that he was without sufficient information to either confirm or deny the veracity of any of the invoices. Riley's failure to acknowledge any of the indebtedness is particularly questionable given the parties long and active business relationship. Many of the invoices concerned service work which NC allegedly performed on Riley's equipment. It is reasonable to assume that the requisite information to confirm or deny such invoices would be accessible upon reasonable inquiry.[10]

We conclude that the trial court did not abuse its discretion in the present case. Civil Rule 36 is intended to expedite litigation through the elimination of uncontested issues. To be sure, Rule 36 does not compel the automatic rejection of late responses. As the result in *Palzer* demonstrates, such a rigid rule would result in the unjustified suppression of the merits. In the same vein, however, too liberal sufferance of a litigant's procrastination is equally undesirable, since such a policy would undermine the purposes of the rule. The superior court must therefore exercise its discretion to balance the desirability of expediting litigation with the need to promote presentation of the merits. Upon our review of the record, we cannot say that the court abused its discretion in failing to afford Riley the opportunity to file late responses.

### B. *Summary Judgment*

Riley next argues that genuine issues of material fact remained in dispute even after the requests for admissions were deemed admitted. Riley thus submits that it was improper for the trial court to grant NC's motion for partial summary judgment.

■ We recently summarized the applicable legal principles:

A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that [the] party is entitled to judgment as a matter of law." Alaska R.Civ.P. 56(c). In determining whether summary judgment is proper in a particular case, the trial court's function is limited to determining whether or not a genuine issue of material fact exists. *Wilson v. Pollet*, 416 P.2d 381, 384 (Alaska 1966). Where the record presents such an issue of fact, the question must be resolved at trial. "In ruling on a motion for summary judgment all reasonable inferences from the proofs offered are drawn against movant and viewed in the light most favorable to the party opposing the motion." *Id.* at 383–84. *See also Alaska Rent-A-Car, Inc. v.*

---

**8.** *See Moses v. Moses*, 180 Colo. 397, 505 P.2d 1302 (1973) (en banc) (trial court abused its discretion in failing to allow late response since answers to interrogatories clearly placed matter in dispute).

**9.** Where a party submits an insufficient response, the court may take the matter as admitted or order a further answer. Alaska R.Civ.P. 36. *See generally* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2261 (1970). Alternatively, the requesting party may file a motion to compel the responding party to respond with greater specificity. *See Pomianowski v. Merle Norman Cosmetics, Inc.*, 507 F.Supp. 435, 439 (S.D.Ohio 1980).

**10.** The invoices for service work performed on equipment allegedly owned by Riley were dated and included a serial number identification of the equipment involved as well as a description of the work performed.

"An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny." Alaska R.Civ.P. 36. A denial which merely tracks the Rule 36 language does not necessarily satisfy the respondent's obligation to avoid evasive or meritless denials. *See Asea v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1246 (9th Cir. 1981).

*Ford Motor Co.*, 526 P.2d 1136, 1139 (Alaska 1974); *Ransom v. Haner*, 362 P.2d 282, 290 n.24 (Alaska 1961). Thus, the party seeking summary judgment "has the entire burden of proving that his opponent's case has no merit." *Nizinski v. Golden Valley Electric Ass'n., Inc.*, 509 P.2d 280, 283 (Alaska 1973), *quoting Braund, Inc. v. White*, 486 P.2d 50, 54 n.5 (Alaska 1971).

*Williams v. Municipality of Anchorage*, 633 P.2d 248, 250 (Alaska 1981). Rule 36 provides that admissions are "conclusively established" for purposes of the litigation. *Molitor v. ATZ Travel, Inc.*, 550 P.2d 810, 812 (Alaska 1976).[11] Summary judgment, therefore, may be based on deemed admissions if such facts are dispositive. *Palzer v. Serv-U-Meat Co.*, 419 P.2d at 206; *Moosman v. Joseph P. Blitz, Inc.*, 358 F.2d 686, 688 (2d Cir. 1966). Furthermore, since the deemed admissions validated the entire indebtedness, NC met its initial burden to show entitlement to summary judgment. Thus, Riley had the burden to produce competent evidence showing that there were material issues still in dispute.[12]

■ We conclude that Riley failed to establish that material issues remained in dispute. Riley filed a statement of genuine issues in opposition to NC's motion for partial summary judgment. The five issues identified in this motion essentially restate Riley's contention that the full indebtedness was not owed. On appeal, Riley submits that at least the contention that the parties had agreed to a settlement procedure remained in dispute. Any purported settlement procedure, though, would be of little consequence, since the effect of the admissions was to acknowledge that all amounts were in fact owed. Similarly, the other issues identified by Riley had no significance after the requests were deemed admitted. The entry of partial summary judgment was proper.[13]

### C. Prejudgment and Post-judgment Interest

■ The last issue with respect to the promissory note concerns the award of prejudgment and post-judgment interest. The note, executed by the parties in December 1975, provided that Riley would pay "interest after maturity at the highest lawful contract rate." The note matured on July 2, 1976.

Where a contract does not contain an express interest agreement, prejudgment interest is set at the legal rate. AS 45.45.-010(a).[14] Alternatively, parties may agree to an applicable rate of interest, providing that such a rate does not exceed the rate proscribed by application of the variable

---

**11.** *But see Dependahl v. Falstaff Brewing Corp.*, 491 F.Supp. 1188, 1194 (E.D.Mo.1980) (deemed admissions not given conclusive effect, but only considered as evidence).

**12.** *State v. Fairbanks N. Star Borough School Dist.*, 621 P.2d 1329, 1331 (Alaska 1981); *Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Serv. Co.*, 584 P.2d 15, 24 (Alaska 1978).

**13.** We note that during oral argument on NC's motion for summary judgment, Riley's counsel stated:

> So if this court—if this court deems that for the purposes of this litigation that the Admissions are deemed admitted, then the—Mr. Eide has prevailed in his Summary Judgment Motion. He is entitled to Summary Judgment. The only issues left in the case is on the counterclaim.

We need not address whether this statement prevents Riley from challenging the entry of

summary judgment on appeal. *See Williams v. City of Valdez*, 603 P.2d 483, 488 (Alaska 1979).

**14.** At the time the contract was executed, as well as when the debt matured, AS 45.45.010(a) set the legal rate of interest at 6%. An amendment to AS 45.45.010(a), effective September 12, 1976, raised the legal rate of interest to 8%. Ch. 159, § 1, SLA 1976.

Amendments to the legal rate of interest after the action accrued, but before judgment, govern from the date they become effective. *City and Borough of Juneau v. Commercial Union Ins. Co.*, 598 P.2d 957, 959 (Alaska 1979); *Rachlin & Co. v. Tra-Mar, Inc.*, 33 A.D. 370, 308 N.Y.S.2d 153, 158 (1970). Were AS 45.45.010(a) applicable to the present controversy, prejudgment interest would therefore be set at 6% from July 2, 1976 through September 12, 1976, and thereafter at 8%. A 1980 amendment to AS 45.45.010(a), which raised the legal rate of interest to 10.5%, has no applicability. Ch. 107, §§ 2, 4 SLA 1980.

interest rate formula set forth in AS 45.45.-010(b).[15]

The superior court awarded NC prejudgment interest at the rate of nine and one-half per cent. This result reflects an interpretation of the interest provision in the note to require Riley to pay interest on the note at the highest rate sanctioned by AS 45.45.010(b) at the date of maturity. Riley argues that the parties did not "expressly agree" to an interest rate, so that the applicable rate is governed by AS 45.45.010(a), and alternatively, that interest should be determined by reference to AS 45.45.010(b) as it existed at the time the contract was executed, not when the debt matured.[16]

"The purpose of contract interpretation is to ascertain and effectuate the reasonable expectations of the parties." *Stordahl v. Government Employees Insurance Co.*, 564 P.2d 63, 65 (Alaska 1977); *accord Wright v. Vickaryous*, 598 P.2d 490, 497 (Alaska 1979); *Day v. A & G Construction Co.*, 528 P.2d 440, 445 (Alaska 1974). Since neither party alleges that the surrounding circumstances are in dispute, interpretation of the words of the contract is treated on appeal in the same manner as questions of law. *Wessells v. State*, 562 P.2d 1042, 1046 n.9 (Alaska 1977); *Day v. A & G Construction Co.*, 528 P.2d at 443. Thus, this court "need not defer to the judgment of the trial judge...." *Alesna v. LeGrue*, 614 P.2d 1387, 1389 (Alaska 1980).

We first reject Riley's argument that the note does not contain an express interest

agreement. The note does not state a specific rate of interest. Nor does it expressly refer to the variable interest rate formula set forth in AS 45.45.010(b). Such omissions, however, do not necessarily render AS 45.45.010(b) inapplicable. "The terms 'highest legal interest' or 'lawful interest,' as distinguished from legal interest, means any rate of interest up to that fixed by statute as the maximum rate at which interest can be contracted for." 45 Am. Jur.2d, Interest and Usury § 2, at 16–17 (1969). Quite simply, the rate set forth in AS 45.45.010(a) is not the highest legal rate of interest; only by application of the variable interest rate formula is it possible to ascertain the highest legal rate of interest. Riley and NC specifically addressed the interest rate issue in negotiating the contract. The contractual provision they adopted is sufficient in our view to constitute an express interest agreement.[17] Here, the express agreement is to set interest at the highest rate sanctioned by application of the variable interest rate formula. To hold otherwise in an era of interest rate instability would unduly impair the ability of parties to a commercial transaction to allocate the risk of nonperformance.

Riley's alternative argument is that any "express agreement" in the note at most referred to AS 45.45.010(b) as it existed at the time the parties executed the contract. The statutory formula was modified subsequent to the formation of the contract but before the debt matured. In support of his

15. At the time the debt matured, AS 45.45.-010(b) provided:

No interest may be charged by express agreement of the parties in a contract or loan commitment dated after June 4, 1976 which is more than five percentage points above the annual rate charged member banks for advances by the 12th Federal Reserve District that prevailed on the 25th day of the month preceding the commencement of the calendar quarter during which the contract or loan commitment is made. A contract or loan commitment in which the principal amount exceeds $100,000 is exempt from the limitation of this subsection.

16. Riley also argues that the contractual provision is ambiguous since it is reasonably subject to differing interpretations. *State v. Fairbanks*

*N. Star Borough School Dist.*, 621 P.2d 1329, 1331 n.4 (Alaska 1981); *Wessells v. State*, 562 P.2d 1042, 1046 (Alaska 1977). Consequently, Riley submits that any ambiguities should be resolved against NC, the party who drafted the agreement. *See Tsakres v. Owens*, 561 P.2d 1218, 1220 n.2 (Alaska 1977); *Modern Const., Inc. v. Barce, Inc.*, 556 P.2d 528, 530 (Alaska 1976). We conclude that in the present context the contractual provision—interest after maturity at the highest lawful contract rate—is not ambiguous.

17. *But see Universal C.I.T. Credit Corp. v. Ingel*, 347 Mass. 119, 196 N.E.2d 847, 851 (1964) (interest due at legal rate notwithstanding that the note provided "highest lawful rate").

position, Riley notes that AS 45.45.010(b) expressly provides that the amended formula applies only to contracts dated after June 4, 1976, whereas Riley and NC signed the note in December 1975.

We are not persuaded by Riley's argument. In the context of the present transaction, it is most consistent with the intent of the parties to interpret "highest lawful rate at maturity" as an agreement to be bound by modifications to the statutory formula enacted prior to maturity. This is not a case where the parties attempted to negotiate a cost of credit. Rather, it is most likely that the parties intended the interest provision to indemnify NC for damages incurred by Riley's failure to perform. As NC persuasively argues, Riley could have avoided all interest by the timely repayment of the debt.[18] It would be anomalous to adopt a rule which, due to rising interest rates, rewards Riley for failing to perform, and, more generally, creates an incentive for debtors to default.[19]

Our decision to give effect to the note provision in a manner most consistent with the parties' intent is not contrary to the statutory limitation. We recognize that at the time of maturity AS 45.45.010(b) provided that the amended formula applied only to contracts executed after June 4, 1976.[20] It is our view that the limitation reflects the settled rule that a statutory amendment of the legal interest rate will not be applied retroactively if it alters the rights and duties under an existing contract.[21] Thus, the statutory limitation bars application of the amended formula where

parties adopted an usurious interest provision at the time a contract or loan commitment was executed. The question, here, is not whether a subsequent legislative enactment validates a rate of interest or an interest formula which was usurious when executed, but whether parties may agree to be bound by whatever the maximum interest rate may be at the date of maturity. We conclude that at least where the interest provision is intended to establish compensatory damages for the detention of money, the statutory language does not preclude parties to a contract from agreeing to be bound by future modifications in the statutory formula.[22]

Our disposition of the prejudgment interest issue validates the superior court's award of post-judgment interest at the rate of nine and one-half per cent. AS 09.30.070 provides that the legal rate of post-judgment interest is applicable unless judgment is on a written contract which specifies a rate of interest. We interpret the promissory note to specify that prejudgment interest is set at nine and one-half per cent, the highest rate allowable on the date of maturity pursuant to the AS 45.45.010(b) interest rate formula. It was therefore proper for the superior court to award NC post-judgment interest at the rate of nine and one-half per cent.

## II. RILEY'S CONTRACTUAL COUNTERCLAIM

Riley argues that it was inappropriate to resolve the counterclaim concerning the

**18.** This rationale is noted in cases enforcing agreements to pay interest after maturity at a higher rate than permitted by the usury laws. *See generally* Annot., 28 A.L.R.3d 449 (1969) ("Provision For Interest After Maturity At A Rate in Excess Of Legal Rate As Usurious Or Otherwise Illegal").

**19.** *See Mid-Jersey Nat'l Bank v. Fidelity-Mortgage Investors,* 518 F.2d 640, 645 (3rd Cir. 1975) ("Equity is not served by permitting a debtor to refuse repayment of a note when it becomes due and then to profit by the delay resulting from ensuing litigation.").

**20.** The legislature subsequently deleted the restriction on application of the revised formula to contracts or loan commitments dated after June 4, 1976. Ch. 94, §§ 1, 2, SLA 1981.

**21.** *See generally* 45 Am.Jur., Interest and Usury § 10, at 23–25 (1969); Annot., 4 A.L.R.2d 932 (1949).

**22.** *But cf. Campbell v. Gawart,* 46 Mich.App. 529, 208 N.W.2d 607 (1973) (in land sale contract, agreement to be bound by any increases in the legal rate not given effect since legislature intended amendment to have only prospective application). *See also* Annot., 60 A.L.R.3d 473 (1974).

rate of payment for excavation services by summary judgment.[23] We agree.

The trial court granted NC's motion for summary judgment on the contractual counterclaim, apparently out of the belief that the purported mistake was in actuality an error in business judgment, and in any event, was Riley's unilateral error. The court noted that Riley was an experienced excavator, thus suggesting that Riley should have been aware that payment at $3.33 per cubic yard is not the equivalent of payment at $2.40 per ton.

The general rule is that reformation is not available to obtain relief from a unilateral mistake. *Lathrop Co. v. Lampert*, 583 P.2d 789, 790 n.6 (Alaska 1978); *Alaska Foods, Inc. v. American Manufacturer's Mutual Insurance Co.*, 482 P.2d 842, 854 (Alaska 1971). NC, and apparently the trial court as well, view Riley's claim as an attempt to renegotiate the contract rate after discovering that the profit margin was insufficient. As NC argues at length on appeal, reformation is not available to obtain relief from a mistake of business judgment regarding a risk which the contract expressly allocates to the aggrieved party. *Fowler v. City of Anchorage*, 583 P.2d 817, 824 (Alaska 1978). This view assumes that Riley, an excavator for 18 years, should have known the consequences of the rate of payment specified in the contract.[24]

In our view, however, both the trial court and NC misperceive the central legal argument advanced by Riley. The gravamen of Riley's counterclaim is that he entered the contract under the mistaken impression that the rate of payment specified in the contract, $3.33 per cubic yard of gravel filled in excavation, was the equivalent of $2.40 per ton of gravel, the rate used by the parties in a prior transaction. More importantly, Riley avers that NC was aware that Riley entered into the contract under this mistake. Riley's affidavit and deposition adequately corroborate his position.

Reformation is appropriate where, by reason of mutual mistake, the written agreement does not accurately reflect the bargain intended by the parties. *Durkee v. Busk*, 355 P.2d 588, 591 (Alaska 1960). Reformation is also available where "a party executes a written instrument knowing the intention of the other party as to the terms to be embodied therein, and knowing that [the] writing does not accurately express that intention." *Straight v. Hill*, 622 P.2d 425, 428 (Alaska 1981) *quoting Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87, 94 (Alaska 1974). *See also Gablick v. Wolfe*, 469 P.3d 391, 394 (Alaska 1970). *See generally* A. Corbin, Corbin on Contracts § 610, at 692 (1960); Restatement of Contracts § 404, at 973 (1932). In *Straight v. Hill*, this court concluded, in words particularly applicable to the present case, that:

> Whether there was a mistake for which reformation should be allowed will depend in part on the credibility of the affiants on whom the parties relied in seeking and opposing the summary judgment. Such questions of credibility are particularly apt for resolution at trial, not in summary judgment proceedings.

622 P.2d at 428, *quoting Gablick v. Wolfe*, 469 P.2d at 396.

Riley also raises a related argument. He contends that an agent of NC agreed to reform the contract during the course of performance. NC submits that any such modification is of no effect since it was unsupported by consideration. Riley, NC argues, was under an existing contractual obligation to perform the work at the terms stated in the contract. NC's position is again premised on the view that Riley had no basis to obtain reformation. Assuming that Riley can establish the requisite proof to be entitled to reformation, consideration for the oral modification is furnished by the compromise itself. *See Fieser v. Stinnett*, 212 Kan. 26, 509 P.2d 1156, 1162 (1973). Thus, whether an oral contract existed, and if so, what were the terms of the contract,

---

**23.** We previously set forth the applicable legal principles in review of a motion for summary judgment.

**24.** *See Lewis v. Anchorage Asphalt Paving Co.*, 579 P.2d 532 (Alaska 1978) (experienced contractor charged with knowledge of subsurface soil conditions).

present questions of fact which can only be resolved at trial. *Curran v. Hastreiter,* 579 P.2d 524, 526 (Alaska 1978); *Jackson v. White,* 556 P.2d 530, 532 (Alaska 1976).

In support of the motion for summary judgment, NC noted that Riley submitted billings to NC which used the $3.33 contract rate for gravel and that Riley accepted final payment at the $3.33 rate. Such facts do not necessarily preclude a finding that reformation is warranted or, in the alternative, that the parties modified the contract. Though the requisite elements of Riley's counterclaim may prove difficult to establish, we conclude that the counterclaim is premised on a theory which is particularly apt for resolution by trial.[25]

The judgment of the superior court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings in accordance with this opinion.[26]

RABINOWITZ, Justice, dissenting in part.

I find that I am unable to agree with the majority's ruling on the question of the rate of prejudgment and postjudgment interest applicable to the note executed by Riley.

Riley's note provided for "interest after maturity at the highest lawful contract rate." I do agree with the court's ruling that "the highest lawful contract rate" refers to the rate prescribed by AS 45.45.-010(b)—the maximum that can be charged without having a usurious contract—rather than the rate established by AS 45.45.-010(a), which applies when a contract does not state an interest rate. I do not agree, however, that the rate established by AS

45.45.010(b) as modified in 1976 is controlling; the 1976 amendment, which raised the maximum lawful interest rate,[1] is by its terms inapplicable to the note and thus the preamendment rate is controlling.

The 1976 amendment unambiguously states that it is applicable only to contracts dated after June 4, 1976; Riley's note was dated December 12, 1975. Even assuming that the parties intended that changes in the statutory interest ceiling would be applicable to the note, in this case the legislature did not change the rate applicable to the note and thus the parties' intent is irrelevant. Therefore, the appropriate interest rate is that prescribed by the preamendment version of AS 45.45.010(b).

---

25. NC also argues that reformation is not available where the contract has been fully executed by both parties. We rejected a similar claim in *Gablick v. Wolfe,* 469 P.2d at 395–96. The only authority cited by NC, *Board of Trustees of Nat'l Training School for Boys v. O. D. Wilson Co.,* 133 F.2d 399 (D.C.Cir.1943), is inapplicable on the facts. There, a contractor formed a contract after realizing that due to a clerical mistake his bid was too low. The court held that the contractor, who chose not to seek rescission, could not enter into a contract, complete performance, and then seek reformation. *See also Lemoge Electric v. County of San Mateo,* 46 Cal.2d 659, 297 P.2d 638, 641 (1956).

26. We need not address the parties' arguments concerning the award of attorney's fees. The award of attorney's fees is vacated in light of our disposition of the counterclaim issue. We note that were NC to ultimately prevail on the counterclaim, the superior court may consider both claims in ascertaining the appropriate award of attorney's fees.

1. Prior to the 1976 amendment AS 45.45.010(b) provided for a maximum rate of "four percentage points above the annual rate charged member banks for advances by the 12th Federal Reserve District" at a particular time; the 1976 amendment changed "four" to "five", thus raising the ceiling. The parties agree that "five points above the annual rate ..." is 9.5%.