Chris PALZER, Marvel D. Palzer, and Gilbert
Copper, a/k/a Gilbert M. Cop-
per, Appellants,

v.

SERV–U–MEAT COMPANY, a division of
Seattle Packing Company, Inc., a cor-
poration, et al., Appellees.

No. 643.

Supreme Court of Alaska.

Oct. 17, 1966.

John W. Hendrickson, Groh & Benkert, Anchorage, for appellants Marvel D. Palzer and Gilbert M. Copper.

Theodore M. Pease, Jr., Burr, Boney & Pease, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

RABINOWITZ, Justice.

Several questions of first impression concerning our Rules of Civil Procedure pertaining to requests for admissions and summary judgments are raised by this appeal.[1]

In the court below appellee Serv-U-Meat and six other creditors instituted suit on January 29, 1965, against appellants for "goods and materials" sold to named appellant Chris Palzer. In their complaint appellees sought recovery against appellants Marvel D. Palzer and Gilbert Copper (hereinafter referred to as appellants) on the theory that they were the third-party beneficiaries of a $25,000.00 payment bond furnished by Chris Palzer under a ferry concession contract with the State of Alaska. Alternatively, appellees sought recovery as "protected beneficiaries" by virtue of AS 36.25.010–36.25.020.[2] Appellees predicated appellants' liability on the fact that the latter were the sureties on the payment bond supplied by Chris Palzer.[3] The contract in question pertained to the operation by Chris Palzer of certain concessions aboard the MV *Malaspina,* MV *Taku,* and MV *Matanuska* of the State of Alaska's ferry system.

After the complaint was served, an appearance on behalf of appellants was filed by Wendell P. Kay. Then, on February 24, 1965, before issue was joined, appellees served "Requests For Admission Of Facts" upon appellants. Essentially, as to each of the seven claims, the requests sought admissions as to the existence of a concession contract between Chris Palzer and the State of Alaska; the delivery by Chris Palzer to the State of Alaska for a $25,000.00 payment bond (pursuant to the concession contract) signed by him as principal and by appellants as sureties; the purchase by Chris Palzer of goods and materials from the appellees "under his contract with the State of Alaska"; and that the reasonable value of such goods and materials was as stated in the requests as to each of the seven claims.[4]

On April 8, 1965, appellants filed a document captioned, in part, "Response To Request For Admission Of Facts" (although filed on the 8th, the document was dated April 7, 1965). This response denied the requests of appellees pertaining to the alleged purchase by Chris Palzer of goods and materials from appellees and further

---

1. See generally Civ.R. 36 and Civ.R. 56.

2. These provisions have been characterized as "little Miller Act" provisions.

3. Paragraph number 44 of the contract between Chris Palzer and the State of Alaska reads in part:

   The Concessionaire must also furnish within ten (10) days of the signing of this contract by both parties, a payment bond in form and with the sureties acceptable to the State in the amount of Twenty Five Thousand Dollars ($25,-000.00) to secure the payment of all obligations of the Concessionaire incurred hereunder, including labor, materials, and supplies.

4. Typical of the wording of the requests for admissions is that by which appellee Serv-U-Meat sought to have appellants admit the truth of the following:

   Chris Palzer during the period ending on or about July 1, 1963, purchased goods and materials from Serv-U-Meat which were used by Chris Palzer in the performance of the work and services under his contract with the State of Alaska described in request under 1 above. The reasonable and agreed cost of said goods purchased during said period by Chris Palzer amounted to $19,930.99, no part of which has been paid, although demand therefor has been made upon Chris Palzer.

denied the asserted reasonable values of the goods and materials allegedly sold by appellees. These responses were not sworn to by either appellant but were signed by appellants' then counsel Wendell P. Kay.[5] On the same day that appellants filed their responses to appellees' requests for admissions, appellees filed a motion for summary judgment.[6] No supporting affidavits were presented by the movants, instead their motion for summary judgment was "based upon the complaint, request for admissions * * * and memorandum submitted herewith."

On April 9, 1965, an answer was filed on behalf of appellants. In their answer appellants denied that goods and materials had been sold to their principal Chris Palzer by appellees as alleged by appellees. Appellants also interposed an affirmative defense in the nature of estoppel.[7] At this time appellants also filed a "Statement Of Genuine Issues," in which statement appellants reasserted their estoppel defense and then went on to state that:

The defendants have denied the material allegations of each of the causes of action stated in the complaint with regard to the amount of the purchases by Palzer and payments.[8]

After oral argument was heard the court granted appellees' motion for summary judgment. In the course of his oral decision, the trial court indicated that he was of the opinion appellants had failed to comply with the provisions of Civ.R. 36(a),[9] that they had thereby admitted all of appellees' requests, and that therefore a grant of summary judgment to appellees was appropriate.[10]

---

5. Civ.R. 36(a) provides in part:
   Each of the matters of which an admission is requested shall be deemed admitted unless, within a period designated in the request, not less than 10 days after service thereof or within such shorter or longer time as the court may allow on motion and notice, the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters * * *.

6. Appellees' motion for summary judgment was dated April 7, 1965, and shows that it was served upon counsel for appellants on April 8, 1965.

7. In this defense appellants alleged that the State of Alaska wrongfully breached its contract with their principal, Chris Palzer, and that the State's breach both cancelled the subject payment bond and resulted in an estoppel against the State of Alaska and appellees from "claiming or asserting any liability against the defendants, or any of them, under the provisions of the said bond."

8. It should be noted that on April 9, 1965, appellants filed "Opposition To Motion For Summary Judgment." In this document appellants resisted the summary judgment motion on the grounds that:

1. The motion and supporting papers do not comply with the provisions of Rule 56(c) of the Civil Rules.
2. There are genuine issues of material fact, as indicated by the Statement of genuine issues filed herewith.
3. The responses to the Requests for Admissions filed by the Plaintiffs were filed on April 7, 1965, and prior to the time Plaintiff filed this Motion for Summary Judgment.
4. An answer denying many allegations of the complaint and setting up genuine issues of material fact has been filed.

9. Supra note 5.

10. The trial court stated in part at the April 30, 1965, hearing:
   We have—the only thing we have is a little paper signed by counsel which purports to be response to the request for admission, filed more than thirty days after the request. Now, certainly it doesn't comply with the rule on requests, and at this late date, the Court is rather doubtful it has the authority to grant a motion for further time, if one was made, but it hasn't been made. I, therefore, must consider that there is an admission of all these requests, and that the admission for the basis of the motion for summary judgment, and I find them sufficient for a motion, to grant the motion for a summary judgment; and the motion is granted.
   Note that the lower court at this time did not enter a formal summary judgment.

Within five days of the superior court's decision on the summary judgment motion, appellants filed a three-part motion. In this motion appellants requested a rehearing on the summary judgment motion; "leave to file a responding affidavit" to the summary judgment motion; and leave to file a supplemental pleading "to add an additional party Plaintiff, William M. Shear, Trustee in Bankruptcy of Chris Palzer."[11] With this motion appellants filed affidavits of Chris Palzer and appellant Gilbert Copper. In his affidavit Chris Palzer stated in part that the amounts alleged in the seven causes of action of appellees were "incorrect, and in each instance alleged indebtedness in excess of the amounts actually owing."[12]

The lower court then heard arguments from counsel on the motion for rehearing.[13] At this hearing, then counsel for appellants, Mr. Kay, stated that he had informed opposing counsel that:

I was taking these interrogatories with me to Seattle on my trip outside. That I would discuss them with one of the sureties who happened to be in Seattle at that time, and that I would file responses to the interrogatories sometime after my return on March 29, 1965, and he verifies his understanding to that effect in this letter of March 16, 1965, and informs me in the letter, that, under these circumstances, he will not proceed or make any motion in the case until after April 15, of 1965. So, as far as there being any delay, this was a delay which was, in effect, requested by me, and authorized by them, and agreed upon by them.

At the conclusion of the hearing, the court took the matter under advisement and then by minute order, granted appellees summary judgment.[14] At this time the trial court also entered a formal "Summary Judgment With Attachment" in which appellees recovered the principal sum of $25,-000.00 and $2,600.00 in attorney's fees.[15]

Several subsidiary issues warrant comment prior to disposition of what we deem to be the paramount issues in this appeal. We start with appellants' position that since the "trial court never made a finding that there were 'no genuine issues of fact' to be tried," the "failure to make such a finding in and of itself is ample ground for the reversal of the judgment." Neither the

---

11. It is uncontested that at the time these actions were instituted appellants' principal Chris Palzer had been "adjudicated a bankrupt by the U.S. District Court for the District of Alaska at Anchorage."

12. Appellant Copper, in his affidavit asserted in part:

That * * * a great many of the items claimed in each of the Causes of Action stated in the complaint herein, never actually were aboard the vessels of the ferry system, upon which the Concessionaire was performing his contract, but never left a warehouse in Ketchikan, where these goods were seized by representatives of the United States, Department of Internal Revenue; that each of the claims herein is therefore incorrect in a substantial amount.

13. Technically, this was a Civ.R. 60(b) motion for relief from judgment. Civ.R. 60(b) reads in part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

*   *   *   *   *

(6) any other reason, justifying relief from the operation of the judgment.

14. Note the record discloses that the trial court did not specifically rule on any of the three-fold aspects of appellants' motion. The transcript of the June 17, 1965, minute order proceedings shows that the trial judge stated:

I have previously taken this matter under advisement, and now, at this time, I grant the original motion for summary judgment, and have this date, signed summary judgment with attachment which has previously been submitted on the 5th of May, by counsel for plaintiffs. The summary judgment with attachment which has been now signed may be filed.

15. The judgment also provided for the issuance of execution against certain real and personal property of the appellants.

text of Civ.R. 52 nor Civ.R. 56 lends any support to appellants' position. Our Civ. R. 52(a) specifically provides in part that:

Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).

Decisions which have construed the federal counterparts of our Civ.R. 52 and Civ.R. 56 hold that no findings of fact are necessary in ruling on motions for summary judgment.[16] We conclude that in disposing of motions for summary judgment under our rules of civil procedure no findings of fact are required of the trial court. And we specifically hold that in granting summary judgment it is unnecessary for the trial court to make findings in regard to the lack of any genuine issues of material fact to be litigated.

Appellants tangentially argue that our rule of civil procedure providing for summary judgment requires that such motions be supported by affidavits, and if not so supported, the granting of summary judgment is precluded. Again, appellants' contention is contrary to the pertinent text of Civ.R. 56(c) which reads:

The motion * * * may be supported by affidavits setting forth concise statements of material facts made upon personal knowledge. * * * Judgment shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

Despite the textual differences between our Civ.R. 56(c) and the federal rule,[17] we are in accord with those authorities which have interpreted Fed.R.Civ.P. 56 as not requiring the party moving for summary judgment to accompany his motion with supporting affidavits.[18] Civ.R. 56 contemplates the piercing of factual issues raised by the pleadings.[19] We hold that the use of affidavits is permissive under Civ.R. 56 since affidavits are but one of the several materials, and combinations of materials, which were intended by the rule as potential bases for the granting of summary judgments.[20]

From the foregoing discussion it follows that "admissions on file" may be used by the movant to establish facts which entitle him to summary judgment.[21] Under Civ.R. 36(a),[22] a party can be required to admit the "truth of any relevant matters of fact set forth in the request." Such requests are deemed admitted unless, within

16. See Dredge Corp. v. Penny, 338 F.2d 456, 463 (9th Cir. 1964); Fromberg, Inc. v. Gross Mfg. Co., 328 F.2d 803, 806 (9th Cir. 1964); AR Inc. v. Electro-Voice, Inc., 331 F.2d 508, 513 (7th.Cir. 1962). 6 Moore, Federal Practice § 56.02[11], at 2046–47 (2d ed. 1965); 2B Barron & Holtzoff, Federal Practice & Procedure § 1125, at 495 (rev. ed. 1961); 3 id. § 1242, at 201 (rev. ed. 1958); see generally 5 Moore, Federal Practice § 52.08, at 2670–71 (2d ed. 1964).

17. Compare with Fed.R.Civ.P. 56(a), which reads in part:
     A party * * * may * * * move with or without supporting affidavits for a summary judgment in his favor * * *.
   Subdivision (c) of the federal rule provides in part:
     The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

18. See Fletcher v. Evening Star Newspaper Co., 77 U.S.App.D.C. 99, 133 F.2d 395 (1942), cert. denied, Fletcher v. Stephens, 319 U.S. 755, 63 S.Ct. 1165, 87 L. Ed. 1708 (1943); 6 Moore, op. cit. supra note 16, § 56.11[1–3].

19. Id. § 56.04[1].

20. See our recent decision in Wilson v. Pollet, Opinion No. 354, 416 P.2d 381 (Alaska 1966), in which we denied summary judgment where no opposing affidavits had been filed.

21. See 3 Barron & Holtzoff, op. cit. supra note 16, § 1237, at 172.

22. ·Note 5 supra.

a designated time period,[23] the party makes "a sworn statement denying specifically the matters of which an admission is requested" or files written objections to the requests. And, as we have previously indicated, a judgment may be based upon facts actually admitted or upon those facts which are deemed to have been admitted through a party's failure to serve sworn responses or objections to the requests.[24]

This brings us to what we consider to be the crucial issue in this case, namely, whether the trial court correctly denied appellants' Civ.R. 60(b)[25] motion to set aside the summary judgment which the court had granted.

In Sanuita v. Hedberg,[26] we said that one of the purposes of our "Rules of Civil Procedure is to secure the just, speedy and inexpensive determination of every civil action or proceeding and to provide for the efficient operation of the state court system." [27] We also stated in *Sanuita* that:

> circumstances may exist where strict adherence to the requirements of the rules will not advance the rules' objectives.[28]

■ Our review of the entire record in this case has convinced us that the trial court's adherence to the technical aspects of Civ.R. 36 has resulted in the denial of substantial justice to appellants.[29]

As we have pointed out in this opinion, the sole basis of the trial court's entry of summary judgment in the amount of $27,600.00, plus interest, against appellants was the failure of appellants to timely file sworn responses to appellees' request for admissions. It is true that appellants did not respond to the requests for admissions within ten days after they were served with the requests. Yet the trial court was made aware when the motion for rehearing was argued that counsel for appellants had been given, by opposing counsel, until after his return to Anchorage on March 29, 1965, to file responses to the requests. Far from being thirty-two days late as counsel for appellees argues, the March 16, 1965, letter which appellees' counsel [30] wrote to Mr. Kay can be viewed as setting the time period within which the requests for admissions were to be answered, that is, prior to the time for the hearing on appel-

23. The requests for admissions in question designated a ten day period after service of the requests.

24. See 6 Moore, op. cit. supra note 16, § 56.11[6], at 2202, n. 17, where authorities to this effect are collected; 2A Barron & Holtzoff, Federal Practice & Procedure § 834, at 511–13.

25. Note 13 supra.

26. 404 P.2d 647, 651 (Alaska 1965). This case involved issues pertaining to the setting aside of a default under Civ.R. 55(e).

27. Civ.R. 1 reads in part:
> These rules shall be construed to secure the just, speedy and inexpensive determination of every action and proceeding.

See also Civ.R. 94 which provides:
> These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice.

28. Supra note 26, at 651. Compare with Mr. Justice Black's opinion in Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807, 814 (1966), where, in a stockholder's derivative suit, he wrote:
> The basic purpose of the Federal Rules is to administer justice through fair trials, not through summary dismissals as necessary as they may be on occasion. These rules were designed in large part to get away from some of the old procedural booby traps which common-law pleaders could set to prevent unsophisticated litigants from ever having their day in court. * * * Rule 23(b), like the other civil rules, was written to further, not defeat the ends of justice.

See also Justice Black's dissenting opinion in Beaufort Concrete Co. v. Atlantic States Constr. Co., 384 U.S. 1004, 86 S.Ct. 1908, 16 L.Ed.2d 1018, 1019–1020 (1966).

29. Compare: Mely v. Morris, 409 P.2d 979 (Alaska 1966), and Oaks v. Rojcewicz, 409 P.2d 839 (Alaska 1966).

30. Mr. Pease's letter of March 16, 1965, to Mr. Kay reads in part as follows:
> Dear Wendell:
> I received a telephone message from our office on March 15, 1965, to the effect that you had received the request

lees' motion for summary judgment. It is also of importance to note that at the time appellants' motion for rehearing was argued, the lower court had before it Chris Palzer's affidavit which, among other things, denied the indebtednesses claimed by appellees and asserted that they were incorrect and excessive, and it also had before it the affidavit of appellant Gilbert Copper which, in effect, denied that the goods and materials allegedly sold by appellees to Chris Palzer were ever used by Palzer in furtherance of his concession contract with the State of Alaska.[31]

We consider it also significant that at the hearing of appellants' motion for rehearing, appellants' counsel offered to have the responses retyped and answered under oath by one of the parties within a matter of one-half hour. This was not acceptable, and the summary judgment previously granted was not set aside.

These circumstances, when considered with the fact that no discovery had been had in the case prior to the entry of summary judgment; that appellants did not have possession of their principal's books and records and were not shown to have any significant knowledge as to the details of the operations of their principal's business; that the subject requests were directed to business transactions of their principal which spanned a considerable time period, pertained to numerous companies, and involved large sums of money; that lack of good faith on the part of either appellant or their counsel was not shown, have led us to conclude that appellants had presented a case for relief from summary judgment under Civ.R. 60(b), (1), (6)[32] and that it was an abuse of discretion on the lower court's part to have denied appellants' motion for relief from summary judgment.[33] Since Civ.R. 60(b) empowers the trial court to relieve a party from a final judgment on such terms as are just, the case will be remanded for the trial court's determination of appropriate terms upon which the summary judgment is to be vacated.[34]

One additional aspect of this appeal warrants consideration. Appellants contend that the requests for admissions in question are not authorized by Civ.R. 36 (a).[35] Appellants argue that the requests for admissions went to the "very heart of the case and requested admission of all the central and most important aspects of the

---

for admissions which I have filed in this case, that you had taken them with you to Seattle, and that you would file responsive answers on your return after March 29, 1965. To the best of my knowledge, there is no dispute on the facts of this case, and if there are any issues at all, they are purely matters of law. In order to keep the case moving, I am accordingly preparing a motion for summary judgment based on the request for admissions which I have previously filed and I will set it for hearing sometime on or after April 15, 1965. If any facts are incorrectly stated in my request for admissions, I am sure we can work it out by stipulation after your return and in time for the hearing on the motion for summary judgment.

> Very truly yours,
> BURR, BONEY & PEASE
> /s/ Theodore M. Pease, Jr.
> Theodore M. Pease, Jr.

31. Controverting this appellees point to the fact that Chris Palzer had previously confessed judgments as to four of the claims in question here. On the other hand, appellants argued to the trial court that these confessions were made when Chris Palzer's books and records had been seized by the State of Alaska "and he didn't have a shred of data in his possession."

32. Note 13 supra.

33. Alaska Truck Transport v. Inter-Alaska Credit Serv., Inc., 397 P.2d 618, 619–620 (Alaska 1964).

34. Upon remand the trial court should consider, among other things, what costs, if any, should be assessed against appellants' original counsel for his failure to have filed sworn responses to the requests for admissions.

35. Note that appellants never objected, in accordance with the provisions of Civ.R. 36(a) (2), to the scope of the requests for admissions.

case, e. g., that all of the sums requested in the complaint were due and owing," and therefore was an attempted use of admissions "for a purpose for which they were never intended." Civ.R. 36(a) permits a party to fashion requests for admissions as to the "truth of any relevant matters of fact set forth in the request." Here the requests sought to elicit admissions as to the truth of alleged purchases of goods and materials by Chris Palzer in performance of work and services under his concessionaire contract with the State of Alaska and admissions as to the reasonable and agreed costs of such items. In litigation of this character, we can see no reason why requests cannot be directed to the "important and central issues" of the case.[36] We recognize that there is a divergence in the authorities as to the proper scope of requests under Civ.R. 36.[37] We need not at this time attempt to decide this question in its broader aspects. Limiting our holding to the facts of this case, we find no merit in appellants' argument as to the reach of the questioned requests.

The cause is remanded to the superior court to determine appropriate terms upon which appellants are to be relieved from the summary judgment heretofore entered and upon the fixing of such terms, the summary judgment heretofore entered is to be set aside.

36. See Finman, The Request for Admissions in Federal Civil Procedure, 71 Yale L.J. 371, 402–404 (1962).

37. See Finman, id., at 394–404; 4 Moore, Federal Practice § 36.04, at 2711 (2d ed. 1963); 4 id., at 234–35 (2d ed. 1965 supp.).