Steven C. **CHRISTENSEN**, Shannon L. Christensen, Ronald M.G. (Michael) Christensen, Minor Child, and Daniel S. Christensen, Minor Child, Appellants,

v.

NCH **CORPORATION, Cigna Insurance Company, Timothy A. McKeever, and Faulkner, Banfield, Doogan & Holmes, Appellees.**

No. S–7704.

Supreme Court of Alaska.

April 17, 1998.

---

Steven C. Christensen and Shannon L. Christensen, pro se, Fairbanks.

Mark A. Sandberg, Sandberg, Wuestenfeld & Corey, Anchorage, for Appellees NCH Corporation and CIGNA Insurance Company.

Craig F. Stowers, Clapp, Peterson & Stowers, Anchorage, for Appellees Timothy A. McKeever and Faulkner, Banfield, Doogan & Holmes.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

BRYNER, Justice.

Steven C. Christensen, an injured worker, sued his employer, his employer's workers' compensation insurer, and their attorney, alleging a conspiracy to interfere with his medical treatment. The superior court entered summary judgment against Christensen. Christensen appeals, contending that the defendants' discovery violations stymied his efforts to document their conspiracy and that he raised genuine issues of material fact precluding the entry of summary judgment. Because Christensen's arguments lack merit, we affirm.

## I. FACTS AND PROCEEDINGS

In October 1993 Christensen injured his back while working in Fairbanks as a sales representative for NCH Corporation (NCH). He sought medical treatment and filed a workers' compensation claim. The claim was handled by NCH's insurer, CIGNA Insurance Company. CIGNA began paying Christensen temporary total disability benefits.

In November, Christensen's chiropractor referred him to Dr. William Reinbold, an orthopedic surgeon. Before Dr. Reinbold saw Christensen, his office contacted CIGNA and was told that the company would not pre-authorize payment for surgery. In early December, Christensen scheduled an appointment with Dr. John Godersky, a neurosurgeon. Prior to the appointment, CIGNA informed the doctor that it would not pre-authorize surgery. Neither Dr. Reinbold nor Dr. Godersky performed surgery on Christensen.

After learning of CIGNA's contacts with Drs. Reinbold and Godersky, Christensen concluded that the company was interfering with his treatment. Christensen wrote several letters to CIGNA demanding that it cease interfering. Despite CIGNA's assurances that its contacts with the doctors had been routine in nature,[1] Christensen continued to accuse CIGNA of wrongfully interfering with his medical treatment.

---

1. Shortly after receiving Christensen's first letter, a CIGNA claim representative advised Christensen of the company's decision to refuse to pre-authorize surgery without additional medical evaluations. Christensen was told that it was common practice for physicians to contact an insurer for pre-authorization of treatment, and he was also assured that, when pre-authorization is denied, discretion to provide treatment remains with the physician.

In January 1994, CIGNA hired attorney Timothy A. McKeever, a member of the firm Faulkner, Banfield, Doogan & Holmes (collectively McKeever), to represent CIGNA and NCH with respect to Christensen's claim. During the same month, NCH terminated Christensen from his job due to his inability to return to work.

Christensen underwent an employer's medical examination with Dr. Douglas Smith, an orthopedic surgeon, on March 3, 1994. At about the same time, Christensen scheduled an appointment with another orthopedic surgeon, Dr. Edwin Lindig. On March 9, McKeever wrote Dr. Lindig, informing him of Christensen's prior evaluations and enclosing Christensen's medical records. McKeever also enclosed a medical release signed by Christensen and requested Dr. Lindig to forward to McKeever a copy of the doctor's report. Dr. Lindig did not perform surgery.

In April, CIGNA formally controverted Christensen's claim that he needed surgery. A month later, after receiving Dr. Smith's report, CIGNA controverted Christensen's right to further benefits.

The Workers' Compensation Board (Board) subsequently ordered an independent medical examination (IME); the IME hearing was scheduled for November 2, 1994. While the IME was pending, Christensen made arrangements with yet another physician, Dr. Carl Unsicker, to perform back surgery on October 20. Prior to the scheduled surgery, Dr. Unsicker contacted CIGNA to obtain pre-authorization. CIGNA, in turn, contacted McKeever, who asked the Board to hold an emergency prehearing conference to determine if Dr. Unsicker's surgery would preclude Christensen from participating in the scheduled IME hearing.

Hearing officer Charles McLeod convened a conference on October 17; Christensen declined to attend, saying that he would be busy preparing for surgery. During the conference, McLeod contacted Dr. Unsicker by telephone and asked whether having surgery on October 20 would preclude Christensen from attending the November 2 IME. Dr.

Unsicker replied that it would, but said that he had advised Christensen to postpone the surgery until after the IME was completed. Shortly after this conference, both the IME and the surgery were canceled.

The parties eventually settled the workers' compensation case, with Christensen receiving approximately $28,700 and reserving the right to pursue civil claims against CIGNA, NCH, and McKeever.

Christensen filed a complaint in superior court against NCH, CIGNA, and McKeever.[2] The complaint alleged willful interference with Christensen's medical care. Christensen later amended the complaint to allege that CIGNA and NCH had conspired to delay his medical treatment in order to enable NCH to terminate his employment. The amended complaint also accused McKeever of helping NCH and CIGNA cover up the conspiracy and of failing to "fulfill his duties as an officer of the Court" by not insisting that his clients end the conspiracy.

Two law firms entered appearances on behalf of the defendants, one representing NCH and CIGNA, and the other representing McKeever and McKeever's law firm. Christensen requested production of various documents from both sets of defendants; both withheld or redacted numerous requested documents, relying chiefly on the work product doctrine and attorney-client privilege.

Christensen moved to compel production of these documents. On December 7, 1995, Superior Court Judge Jay Hodges held a hearing on the motion to compel. At the conclusion of the hearing, the judge ordered the defendants to submit lists of all withheld documents within thirty days; Christensen was then to review the document lists and move for *in camera* inspection of any documents he thought discoverable.

In early January 1996 the defendants filed notices of compliance with the December 7 order. McKeever's notice, however, did not list each withheld document individually; in-

---

**2.** Christensen's wife and two children joined as plaintiffs in the complaint. Since their claims are derivative of Christensen's, we do not discuss them separately. For brevity's sake we refer to the plaintiffs collectively as Christensen.

stead, it described categories of documents that McKeever withheld and stated McKeever's basis for withholding the documents in each category. McKeever's list included a category consisting of his correspondence with various NCH and CIGNA personnel; the list also included a category consisting of computer notes that a CIGNA claim adjustor had made in Christensen's workers' compensation claim file and that CIGNA had turned over to McKeever.

McKeever withheld the documents in both of these categories based on the work product doctrine and attorney-client privilege.[3] With regard to his correspondence, McKeever pointed out in his notice of compliance that, at the December 7 hearing, the court had said that "correspondence between attorney and client is clearly privileged." With regard to the claim adjustor's computer notes, McKeever explained that the original notes included descriptions of the adjustor's conversations with McKeever and others that fell within the work product doctrine or attorneyclient privilege. McKeever had redacted the notes to eliminate privileged portions and had previously given Christensen the redacted version.[4] McKeever's notice of compliance offered to submit the unedited version of the computer notes and his correspondence with NCH and CIGNA personnel to the court for *in camera* review within twenty-four hours if the court requested.

Christensen filed an objection to McKeever's notice of compliance, complaining that its listing of documents was not sufficiently specific to meet the requirements of the court's December 7 order.[5]

McKeever filed a response to Christensen's objection, contending that his listing of withheld documents was "sufficiently specific to alert [Christensen] and this court as to any problem areas." McKeever repeated his offer to produce the disputed documents to the court for *in camera* inspection. He made this offer unconditionally as to all withheld documents. McKeever also submitted an affidavit signed by his attorney, M. Christine Klein, who attested to her "good faith belief that the Notice of Compliance filed on behalf of Mr. McKeever ... is in conformity with this court's December 7 order" and that "[a]ll documents withheld from [Christensen] have been withheld based on good faith arguments that those documents are privileged or otherwise not discoverable."

Christensen thereafter filed a "Motion to Impose Sanctions, Establish Facts, and Demand for Default Judgment." In this motion, Christensen renewed his claim that the superior court's December 7 order had been violated, and he demanded litigation-ending sanctions against all defendants for the violation.

This discovery dispute was taken up at a hearing held by the superior court on March 28, 1996. Christensen renewed his complaint, stating that "to date we have not received any kind of a list from Mr. McKeever of the documents that we requested; [we received] broad categories, but no itemized list." The court, however, declined to find a violation of its December 7 order. Based on its review of relevant pleadings, the court found McKeever's notice of compliance to be satisfactory. The court also declined to require an *in camera* review of any of McKeever's withheld documents except the adjustor's notes. Relying on the affidavit of McKeever's attorney, Klein, the court found "that it was not necessary for the court to review all

---

**3.** McKeever's notice of compliance grouped his withheld documents into three general categories: privileged documents available for *in camera* inspection; non-privileged documents previously provided or available to Christensen outside the discovery process; and documents outside the scope of proper discovery that McKeever believed to be undiscoverable under any circumstances. Within each of these general categories, McKeever described several more specific subcategories. McKeever's correspondence with NCH and CIGNA personnel and the CIGNA adjustor's computer notes appeared as subcategories under the general category of privileged documents available for *in camera* inspection.

**4.** According to McKeever's notice of compliance, "[t]he redacted material consisted of notes relating to conversations or communications with counsel or which were otherwise prepared pursuant to, as a result of, and in anticipation of litigation."

**5.** Christensen's objection addressed only McKeever's notice of compliance and did not cover the notice of compliance separately filed by NCH and CIGNA.

those documents without some further showing."

The court handled the adjustor's notes differently. In response to Christensen's mention of the notes at the March 28 hearing, McKeever specifically offered to submit an unredacted copy for the court's *in camera* review. The court agreed to the proposal, indicating that it would review the notes and order their production if appropriate. Pursuant to this arrangement, McKeever later submitted the notes under seal.

On April 11, the superior court heard oral argument on motions for summary judgment that the defendants had filed several months earlier. At the outset of the hearing, the court informed the parties that it had reviewed the unredacted adjustor's notes and found that "the documents that were produced redacted, should have no further production." After hearing argument on the summary judgment motions, the court granted summary judgment against Christensen, finding no evidence to substantiate Christensen's claims of intentional interference with treatment, conspiracy, or cover-up.

Christensen appeals, challenging the court's discovery and summary judgment rulings.

## II. DISCUSSION

### A. Did the Superior Court Err in Finding that NCH, CIGNA, and McKeever Complied with Discovery?

#### 1. Standard of review

■ Rulings on discovery and on discovery sanctions are generally reviewed for abuse of discretion. *See Stone v. International Marine Carriers, Inc.*, 918 P.2d 551, 554 (Alaska 1996); *In re Mendel*, 897 P.2d 68, 73 n. 7 (Alaska 1995). We will find an abuse of discretion when we are left with a definite and firm conviction after reviewing the whole record that the trial court erred in its ruling. *See Stone*, 918 P.2d at 554.

#### 2. Discussion

■ Christensen argues that he was "prevented from fully prosecuting [his] case due to the impedance [sic] by Appellees and their agents in the discovery process, despite the court's direct orders to produce." He asserts that the trial court erred in finding that the defendants complied with the court's December 7 discovery order and in failing to impose sanctions for their failure to produce essential documents. These arguments are without merit.

Christensen did not object to the notice of compliance that was filed by NCH and CIGNA. Instead, he moved for production of approximately fifty documents that the companies listed in their notice. In response to Christensen's motion, NCH and CIGNA produced these documents. Christensen relied extensively on them in opposing the defendants' motions for summary judgment. At the April 11 summary judgment hearing, Christensen said nothing to suggest that he sought production of additional documents from NCH and CIGNA; compliance was at issue only as to McKeever.

McKeever had filed a notice of compliance listing various categories of documents that he declined to produce. Although Christensen argued that McKeever's notice of compliance did not comport with the court's December 7 discovery order, the court found the notice satisfactory. Having examined McKeever's notice of compliance, we agree with the trial court. The notice's description of document categories, rather than individual documents, contains sufficient detail to have given Christensen reasonable notice of the nature of documents that McKeever was withholding and his basis for withholding them. Christensen fails to specify how he was prejudiced by the lack of a more detailed description. The superior court did not abuse its discretion in finding satisfactory compliance with its December 7 order. *See Stone*, 918 P.2d at 554, 558.

■ Nor did the court abuse its discretion in refusing to examine *in camera* any documents other than the adjustor's notes. McKeever's notice of compliance and Klein's supporting affidavit established the general nature of the documents that McKeever was withholding, his basis for withholding them, and his good faith in claiming that they were not subject to discovery. Christensen made no showing that the notice of compliance and

supporting affidavit might be incorrect, incomplete, or misleading; he made no showing that inspection *in camera* was likely to reveal evidence of crime, fraud, or intentional misconduct; and he made no showing that an *in camera* inspection was necessary to avoid prejudice.

On appeal, Christensen cites no authority to justify requiring the court to conduct an *in camera* review of discovery documents withheld by a party on grounds of privilege, even when, as here, the assertion of privilege is facially valid, no specific basis for challenging the privilege is established, and no specific need for disclosure is shown. On the facts presented here, we conclude that the superior court had no obligation to conduct a more extensive *in camera* review.

We also conclude that Christensen has failed to show error in the trial court's refusal to order disclosure of the documents that it did examine *in camera*—the adjustor's notes. Upon examining the notes, the superior court concluded that production of the unredacted version was not warranted. Our review of the unedited notes convinces us that they fall within the attorney-client privilege and work product doctrine; furthermore, their disclosure would have been of no material value to Christensen's case.

We find no abuse of discretion in the trial court's discovery rulings.

B. *Did the Superior Court Err in Granting Summary Judgment in Favor of NCH, CIGNA, and McKeever?*

1. *Did the trial court record show the existence of a genuine issue as to any material fact?*

a. *Standard of review*

■ We review a grant of summary judgment *de novo*, applying our independent judgment. *See Reeves v. Alyeska Pipeline Serv. Co.*, 926 P.2d 1130, 1134 (Alaska 1996); *Wright v. Black*, 856 P.2d 477, 479 (Alaska

1993). We take the facts presented in the light most favorable to the nonmoving party and inquire "whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law." *Shade v. Co & Anglo Alaska Serv. Corp.*, 901 P.2d 434, 437 (Alaska 1995) (citing *Broderick v. King's Way Assembly of God Church*, 808 P.2d 1211, 1215 (Alaska 1991)); *see also Mount Juneau Enters., Inc. v. City and Borough of Juneau*, 923 P.2d 768, 772–73 (Alaska 1996). Mere assertions of fact in pleadings and memoranda cannot raise genuine issues of fact. *See Lord v. Wilcox*, 813 P.2d 656, 658 n. 4 (Alaska 1991) (citing *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n. 32 (Alaska 1978)). Nor can unverified pleadings be relied on. *See Jennings v. State*, 566 P.2d 1304, 1309–10 (Alaska 1977).

■ The moving party has the "initial burden of proving, through admissible evidence, the absence of genuine factual disputes and its entitlement to judgment." *Shade*, 901 P.2d at 437. Once the moving party "makes a prima facie showing of its entitlement to judgment on established facts," the burden shifts to the nonmoving party to demonstrate a "genuine issue for trial." *Id.* (citing Alaska R. Civ. P. 56(c),(e); *Broderick*, 808 P.2d at 1215).

b. *Discussion*

Ordinarily, a worker's exclusive remedy for injuries suffered in the course of employment is a workers' compensation claim.[6] *See State v. Purdy*, 601 P.2d 258, 259 (Alaska 1979); *see also Wright v. Action Vending Co.*, 544 P.2d 82, 86 (Alaska 1975) (holding AS 23.30.055 bars wife's loss of consortium action against husband's employer); *Taylor v. Southeast–Harrison W. Corp.*, 694 P.2d 1160 (Alaska 1985) (finding the exclusive remedy of the Workers' Compensation Act bars the action of an employee's estate against employer).

---

**6.** AS 23.30.055 provides in part:

*Exclusiveness of liability.* The liability of an employer prescribed in AS 23.30.045 is exclusive and in place of all other liability of the employer and any fellow employee to the employee, the employee's legal representative,

husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from the employer or fellow employee at law or in admiralty on account of the injury or death.

Under the exclusive remedy rule, Christensen was not entitled to pursue a tort claim against NCH unless he alleged intentional harm.[7] *See Stafford v. Westchester Fire Ins. Co. of N.Y.*, 526 P.2d 37, 43 (Alaska 1974), *overruled on other grounds by Cooper v. Argonaut Ins. Cos.*, 556 P.2d 525 (Alaska 1976). In this context, an intentional harm is a harm committed by a person who acts with specific intent to cause an injury. *See Aetna Cas. & Sur. Co. v. Marion Equip. Co.*, 894 P.2d 664, 670–71 (Alaska 1995) (citing *Borg–Warner Corp. v. Avco Corp.*, 850 P.2d 628, 633 (Alaska 1993)). Even when an employer is negligent or willful in refusing to pay benefits that are legally due, the wrongful failure to pay will not support a cause of action for tort unless the employer's purpose is to injure the claimant. *See Stafford*, 526 P.2d at 43.

Christensen advanced three principal theories of intentional tort: interference by NCH and CIGNA with his medical treatment; a conspiracy by the two companies to delay his medical treatment in order to facilitate his wrongful discharge from employment; and McKeever's failure to end the conspiracy and his attempt to conceal its existence by participating in a cover-up of documents. Our review of the record convinces us that the superior court correctly found no record evidence to substantiate these theories.

The linchpin of Christensen's suit was his claim of intentional interference with his medical treatment. Apart from Christensen's conclusory assertions of interference, however, nothing in the record supports this claim. Christensen did establish that contacts occurred between defendants and Christensen's physicians concerning pre-authorization of medical treatment. Such contacts, however, are not forbidden. *Cf. Langdon v. Champion*, 745 P.2d 1371, 1375 (Alaska 1987) (holding that in a personal injury action, informal *ex parte* conferences between defense counsel and a plaintiff's

physician are permissible).[8] Standing alone, they do not give rise to an inference of intentional wrongdoing.

Moreover, the defendants presented deposition testimony, affidavits, and other documents from the four surgeons they allegedly influenced: Drs. Reinbold, Godersky, Lindig, and Unsicker. The doctors unanimously refuted Christensen's claims of interference.

Drs. Reinbold and Godersky denied any direct contacts with the defendants concerning Christensen's treatment. Both also denied that the defendants had any influence on their medical opinions. And both indicated that, upon examining Christensen, they simply concluded that he was not a candidate for surgery. Drs. Lindig and Unsicker likewise denied any interference or attempted interference with their medical evaluation of Christensen.

Christensen suggests that McKeever's letter to Dr. Lindig is evidence of intentional interference. But the letter contains nothing to support Christensen's claim.

Christensen also points to a report by the Workers' Compensation Board concerning the October 17, 1994, pre-IME conference conducted by hearing officer McLeod. During this conference, McLeod—in McKeever's presence and in Christensen's absence—spoke by telephone with Dr. Unsicker concerning Christensen's then-scheduled surgery. Prompted by a complaint from Christensen, the Board later investigated this *ex parte* hearing and found that McLeod's conduct created an appearance of partiality. Christensen now claims that this finding supports an inference of intentional interference and gives rise to a disputed factual issue for trial.

Yet the Board's report finds no actual impropriety, only an appearance of impropriety. Moreover, the report deals with McLeod's conduct, not McKeever's. It con-

---

7. Christensen's claims against CIGNA and McKeever involved conduct allegedly engaged in by CIGNA as NCH's insurer and by McKeever as CIGNA's attorney. Accordingly, these claims also depended on Christensen's allegation of intentional acts. Our discussion of whether genuine material fact disputes exist addresses the viability of the claims against CIGNA and McKeever.

8. Notably, in *Kruesi v. Norm Aubuchon, Inc.*, AWCB Case No. 9023828 (June 23, 1992), the Workers' Compensation Board applied *Langdon* in the context of a workers' compensation case.

tains nothing suggesting impropriety on McKeever's part, let alone intentional impropriety.

In short, Christensen's claim of intentional interference stands unsupported by the record. The record is devoid of any admissible evidence raising a genuine issue of material fact on the issue.

This deficiency necessarily affects Christensen's other claims: absent evidence of intentional interference, Christensen's adjunct theories of conspiracy and cover-up founder. Moreover, the record discloses no arguably admissible evidence to support Christensen's claim of discriminatory or retaliatory discharge.

In this case, as we have seen, a showing of wrongful failure to pay workers' compensation benefits cannot in itself create a genuine issue of material fact; evidence of specific intent to cause harm is necessary. As we have also seen, Christensen's inability to substantiate his claims of intentional interference, conspiracy, and cover-up cannot be attributed to a denial of proper discovery. The superior court did not err in concluding that there was "no genuine issue as to any material fact" and that NCH, CIGNA, and McKeever were "entitled to judgment as a matter of law." Alaska R. Civ. P. 56(c).

2. *Did the superior court err in ruling on grounds not stated in the defendants' motions and in dismissing the claims with prejudice?*

Christensen argues that the order granting summary judgment must nevertheless fail because it was not based on the grounds stated in the defendants' motions. According to Christensen, the only point the defendants advanced below was that Christensen's complaint should be dismissed because it failed to state a claim upon which relief could be granted. Based on the premise that the defendants sought nothing but dismissal for failure to state a claim, Christensen cites

*Miller v. Johnson,* 370 P.2d 171 (Alaska 1962), for the proposition that his complaint was not subject to dismissal if it might have supported some form of relief, even though the relief demanded in the complaint may not be the kind to which the party was in fact entitled. Christensen further cites *Miller* for the proposition that the order dismissing his complaint should have been entered without prejudice, not with prejudice.

These arguments mischaracterize the defendants' summary judgment motions. Although McKeever did move to dismiss Christensen's complaint for failure to state a claim, he also moved, in the alternative, for summary judgment:

> The allegations against Mr. McKeever in Plaintiffs' complaint, even if taken as true, do not state a claim upon which relief can be granted under Civil Rule 12(b)(6). Furthermore, Plaintiffs have raised no genuine issue of material fact as to Mr. McKeever's liability and Mr. McKeever is entitled to judgment in his favor as a matter of law under Civil Rule 56.

Like McKeever, NCH and CIGNA moved to dismiss for failure to state a claim; but they too alternatively moved for summary judgment, expressly joining in McKeever's motion. In sum, Christensen's claim that the superior court granted relief not specifically requested is groundless.[9]

Since the superior court properly treated the defendants' motions as motions for summary judgment, it follows that the court properly denied Christensen's claims with prejudice, rather than without prejudice.

3. *Did the superior court err in declining to reduce its oral findings to writing?*

After the superior court orally granted the summary judgment motions, Christensen moved for written findings and conclusions. The court denied the motion, entering its final judgment without written

---

9. Moreover, even if the defendants had moved to dismiss only for failure to state a claim, the superior court could properly have entered summary judgment. By its own terms, Alaska Civil Rule 12(b) requires a motion for failure to state a claim to be treated as a motion for summary judgment if "matters outside the pleading are

presented to and not excluded by the court." *Id.* See *Andrews v. Wade & De Young, Inc., P.C.,* 875 P.2d 89, 90 (Alaska 1994); *Homeward Bound v. Anchorage Sch. Dist.,* 791 P.2d 610, 611–12 (Alaska 1990); *Reed v. Municipality of Anchorage,* 741 P.2d 1181, 1184 (Alaska 1987). Here, all parties relied on matters outside the pleadings.

findings. Christensen contends that the court's failure to make written findings was error.

This argument lacks merit. *See* Alaska R. Civ. P. 52(a) ("Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56[.]"); *see also Palzer v. Serv–U–Meat Co.,* 419 P.2d 201, 205 (Alaska 1966) ("[I]n granting summary judgment it is unnecessary for the trial court to make findings in regard to the lack of any genuine issues of material fact to be litigated.").[10]

> 4. *Did the summary judgment order violate Christensen's constitutional right to a jury trial?*

■ Christensen argues that the order granting summary judgment deprived him of a jury trial, in violation of the Alaska Constitution. The Alaska Constitution, however, preserves the right to a jury trial in civil cases only to the "same extent as it existed at common law." Alaska Const. art. I, § 16. At common law—as under current Alaska law—a court had the power to remove factual issues from the jury's consideration "where the court decide[d] there [was] insufficient evidence to raise a question of fact to be presented to the jury." *Taylor v. Interior Enters., Inc.,* 471 P.2d 405, 407 (Alaska 1970) (citing *Galloway v. United States,* 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943) (upholding a directed verdict)). Thus, a party's right to a jury trial will be violated by a summary judgment order only when summary judgment is improperly granted—that is, when a genuine issue of material fact exists. *See Jennings v. State,* 566 P.2d 1304, 1308–09 (Alaska 1977).[11]

Our holding that Christensen failed to raise a genuine issue of material fact thus disposes of his jury trial claim.

**10.** Christensen's reliance on *Dickerson v. Geiermann,* 368 P.2d 217 (Alaska 1962), and Alaska Civil Rule 41(b) is unavailing. *Dickerson* did not involve appellate review of a summary judgment order, and Rule 41(b) deals with involuntary dismissal, not summary judgment.

**11.** *See also Shade v. Co & Anglo Alaska Serv. Corp.,* 901 P.2d 434, 437 (Alaska 1995) ("[A]

---

III. *CONCLUSION*

The judgment is AFFIRMED.

premature grant of summary judgment forecloses a litigant's right to trial[.]"). *See generally* 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2712, at 574 (2d ed. 1983) ("A motion for summary judgment lies only when there is no genuine issue of material fact; summary judgment is not a substitute for the trial of disputed fact issues.").